**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Edward SILVERSTEIN, Defendant-Appellant.**

**Nos. 80–1378, 82–1194.**

United States Court of Appeals, Tenth Circuit.

June 21, 1984.

---

Barrett, Circuit Judge, concurred specially and filed opinion.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Charles D. Anderson, Asst. Federal Public Defender, Kansas City, Kan., with him on the brief), for defendant-appellant.

Thomas D. Haney, Asst. U.S. Atty., Topeka, Kan. (Jim J. Marquez, U.S. Atty., Topeka, Kan., with him on the brief), for plaintiff-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Thomas Edward Silverstein appeals his conviction for the stabbing death of Danny Atwell, a fellow inmate in the United States Penitentiary at Leavenworth, Kansas, in violation of 18 U.S.C. §§ 1111, 2, and 7. Two other inmates, Edgar Wesley Hevle, Jr., and Charles Russell McEvoy, were also indicted for the murder, but Silverstein was tried first after the district court granted his motion for severance.

Because we reverse and remand for a new trial, we fully discuss only those issues that convinced us prejudicial error occurred or that are likely to arise again: whether the trial court erred (1) in admitting certain testimony linking defendant to a group of inmates called the "Aryan Brotherhood"; (2) in admitting into evidence a hearsay statement about the killing; and (3) in permitting the prosecutor to ask the accused questions that implied the existence of a fact not in evidence.[1]

I

At trial, the prosecutor asked numerous witnesses about their knowledge of a group called the "Aryan Brotherhood." Defendant described the Aryan Brotherhood as a group originally formed by white inmates in the California state prison system to protect its members from other racial groups. Although defendant never admitted belonging to the Aryan Brotherhood, the government produced evidence that defendant used certain symbols and phrases characteristic of the group in his correspondence. The government also produced evidence that the defendant's tatoo was a symbol of the Aryan Brotherhood. James T. Schell, an inmate at Leavenworth and a principal government witness, testified that he knew of the Aryan Brotherhood and that the group had members in Leavenworth. He described the group as "a bunch of treacherous dudes" and stated that they were involved in drug activities in the prison. Another inmate, James Moore, testified that Atwell smuggled drugs into the penitentiary for the "California group" —Silverstein, Hevle, and McEvoy. He also testified that Atwell was afraid of the group.

Defendant contends that the trial court should have excluded this evidence because its prejudicial impact outweighed its probative value. Fed.R.Evid. 403. Balancing the probative value of evidence against its prejudicial effect is within the sound discretion of the trial court. *United States v. Guerrero*, 667 F.2d 862, 867 (10th Cir.1981), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 490 (1982). The government's theory at trial was that defendant, Hevle, and McEvoy killed Atwell because Atwell refused to smuggle drugs other than marijuana into prison for the group. The testimony regarding the Aryan Brotherhood therefore had probative value regarding defendant's alleged participation in and motive for the murder. Although the group's name suggests its members are racists, neither the prosecutor's questions nor the testimony focused on that aspect of the Aryan Brotherhood. We find that the trial court did not abuse its discretion in permitting the questioning and admitting the resulting testimony.

---

1. One other alleged error that might come up again on retrial is defendant's contention that the court erred in admitting inmate Randy Arnold's testimony. We have carefully examined the record and conclude that the facts in this case are quite different from the facts of *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), upon which defendant relies. We are satisfied that Randy Arnold was not an informer within the meaning of *Henry* and that his testimony was properly admitted.

## II

Defendant contends that the trial court erred in admitting hearsay testimony. At trial, the prosecutor asked inmate Schell about his contacts with codefendant Charles "Preacher" McEvoy. Schell testified that "Preacher told me that ... Eddy and Tommy [Silverstein] went in there and killed him and said that Atwell hollered when Tommy stabbed him and Tommy told him to be quiet because he was going to die." R. V, 640–41. Over defense counsel's objection, the trial court admitted Schell's hearsay testimony under Fed.R. Evid. 801(d)(2)(E) as a statement by a co-conspirator of a party during the course and in furtherance of a conspiracy. The district court found that there was sufficient independent evidence to establish that defendant, Schell, McEvoy and others conspired to murder Atwell. Thus, the trial court reasoned that McEvoy's statement was in the course and in furtherance of the conspiracy because McEvoy made the statement to Schell in order both to explain to Schell why he was not included in the killing and to prepare an alibi.

■ The hearsay exception of Fed.R. Evid. 801(d)(2)(E) applies only to statements made in the course and in furtherance of a conspiracy. Thus, a declaration made after the termination of the conspiracy does not fall within the exception. *Woodring v. United States*, 367 F.2d 968, 969 (10th Cir.1966). The time at which the conspiracy ends depends upon the particular facts of the case. *Id.* Generally, however, a conspiracy terminates when its central criminal purposes have been attained. *Krulewitch v. United States*, 336 U.S. 440, 442, 69 S.Ct. 716, 717, 93 L.Ed. 790 (1949); *see United States v. Coppola*, 479 F.2d 1153, 1162 (10th Cir.1973). If there was a conspiracy in the instant case, its central criminal purpose was the murder of Atwell. The duration of a conspiracy does not extend to attempts to conceal the crime. *Grunewald v. United States*, 353 U.S. 391, 399–406, 77 S.Ct. 963, 971–975, 1 L.Ed.2d

931 (1957); *Krulewitch v. United States*, 336 U.S. 440, 443, 69 S.Ct. 716, 718, 93 L.Ed. 790 (1949). McEvoy did not make the challenged statement to Schell until at least several weeks after Atwell's death. Thus, McEvoy's declaration occurred long after the conspirators had attained the central object of the conspiracy. The district court therefore erred in ruling that Schell's hearsay testimony was admissible pursuant to Fed.R.Evid. 801(d)(2)(E).

■ The government contends that Schell's hearsay testimony is admissible pursuant to Fed.R.Evid. 801(d)(1)(A).[2] Rule 801(d)(1)(A) provides as follows:

> *"(d) Statements which are not hearsay.* A statement is not hearsay if—
> *(1) Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, ...."

Thus, it applies only to prior statements given under oath. McEvoy was not under oath when he made the challenged declaration to Schell. The rule applies only to prior statements of a witness who testifies at a trial or hearing subject to cross-examination. McEvoy, the declarant, did not testify at a trial or other hearing. The government contends that the exception should apply nonetheless as a matter of fundamental fairness, because defendant obtained a severance so that codefendant McEvoy could testify at defendant's trial. We do not agree. A defendant has no duty to call any witness. We conclude that the trial court erred in admitting Schell's hearsay testimony.

## III

Defendant contends that the trial court erred in permitting the prosecutor to ask defendant questions, over his counsel's ob-

---

2. The government also contends that defense counsel failed to make a timely objection to the testimony. The record, however, refutes this contention. R. V, 636–42.

jection, that implied the existence of a fact the prosecutor knew he could not support by evidence. On cross-examination, the prosecutor asked defendant if he recalled an inmate named John Malone. The defendant replied that he did not. The prosecutor then asked, "Mr. Silverstein ... did you ever tell Mr. Malone ... that the guards had found your tennis shoes with blood on them"? R. VI, 1259. Defendant denied making that statement. The prosecutor then asked, "Did you ever tell Mr. Malone to get you—to try to get you another pair of blue and brown tennis shoes so you could say the ones found weren't yours"? R. VI, 1259–60. The defendant again denied making the statement. The prosecutor never called Malone as a witness.

 Although a prosecutor may impeach a witness on the basis of prior inconsistent statements, Fed.R.Evid. 613(a), a prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable. *See United States v. Dye,* 508 F.2d 1226, 1234 (6th Cir.1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); *United States v. Bohle,* 445 F.2d 54, 73–74 (7th Cir.1971); *Thomas v. United States,* 363 F.2d 159, 163–65 (9th Cir.1966). Thus, a prosecutor who asks the accused a question that implies the existence of a prejudicial fact must be prepared to prove that fact. *See United States v. Harris,* 542 F.2d 1283, 1307 (7th Cir.1976); *United States v. Brown,* 519 F.2d 1368, 1370 (6th Cir.1975). In the instant case, the prosecutor knew that he could not prove by independent evidence the substance of the alleged conversation between Malone and defendant, because Malone escaped from prison before trial and was not recaptured until after trial.[3] Thus, the trial court erred in permitting the prosecutor to ask defendant the challenged questions.

## IV

 We must consider whether the errors at trial were harmless within the meaning of Fed.R.Crim.P. 52(a). We do not view this as a case in which the evidence overwhelmingly points to the guilt of defendant. No one testified as an eyewitness to the murder. Thus, McEvoy's alleged statement to Schell implicating the defendant as the murderer may have been very damaging. Physical evidence connecting defendant to the murder scene was also a major issue at the trial. Although the government offered evidence that the defendant owned a shirt and shoes of the same style and of approximately the same size as those found covered with Atwell's blood after the murder, the government did not establish conclusively that the bloody clothing was defendant's. Hence, the prosecutor's questions that implied that the defendant admitted to Malone that the bloody clothing belonged to him may also have been very damaging. The most important other evidence was the dying declaration of the victim and inmate Arnold's testimony that defendant admitted killing Atwell. The dying declaration was ambiguous at best. The probative value of the dying declaration and Arnold's testimony depended upon the credibility of the witnesses. Therefore, although the properly admissible evidence was sufficient to support the defendant's conviction, we cannot conclude confidently that the errors did not substantially influence the jury's verdict. *See Kotteakos v. United States,* 328 U.S. 750, 763–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). Accordingly, we must reverse and remand the case for a new trial.

REVERSED AND REMANDED.

BARRETT, Circuit Judge, concurring:

I fully concur. However, I do question the vitality of the rule first announced in *Krulewitch v. United States,* 336 U.S. 440,

---

**3.** The instant case is therefore distinguishable from *United States v. Felsen,* 648 F.2d 681 (10th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 317, 70 L.Ed.2d 159 (1981). In *Felsen,* we found no prosecutorial misconduct because any error was harmless and because the prosecutor believed that she had admissible evidence supporting the existence of the fact implied in the question. *Id.* at 687–88.

69 S.Ct. 716, 93 L.Ed. 790 (1949), reiterated in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970): that the hearsay exception which allows evidence of an out-of-court statement by one conspirator to be used against a co-conspirator during the course of or in furtherance of the conspiracy does not extend to actions of the conspirators to cover-up and conceal the criminal enterprise. State courts have generally rejected this rationale. In my view, the agreement among conspirators to "cover up" the criminal act committed is part and parcel of the scheme, and plan.

This court has already recognized exceptions to the *Krulewitch* rule. In *Mares v. United States*, 383 F.2d 805 (10th Cir.1967), *cert. denied*, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969), we held in a prosecution for armed robbery that acts and statements of the appellant made shortly after the armed robbery and before the arrest of either of the two defendants were admissible. In *United States v. Cox*, 449 F.2d 679 (10th Cir.1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972) we held that a tape recording of a co-defendant and third party's conversation which occurred the night after the robbery was admissible, even though the "active" conspiracy had terminated in terms of commission of the central act.

I am cognizant that the out-of-court statements at issue here were made some three weeks following the stabbing-killing and after appellant Silverstein's arrest. It is my view that they should be admissible.