(901 P.2d 521)
No. 71,393

STATE OF KANSAS, *Appellee*, v. JAMES B. MARBLE, *Appellant*.

Opinion filed August 18, 1995.

*Hazel Haupt,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Doyle Baker,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, C.J., LARSON, J., and DANIEL L. LOVE, District Judge, assigned.

LARSON, J.: James B. Marble appeals his conviction after a jury trial of one count of aggravated criminal sodomy, K.S.A. 1994 Supp. 21-3506, contending that the prosecution improperly questioned him on cross-examination, the judge erroneously communicated ex parte with a juror, the trial court erred in excluding evidence impeaching the State's complaining witness, and the trial court improperly failed to grant a downward durational departure during sentencing.

The facts arise out of a July 1993 incident involving Marble and S.W. The versions of the incident are predictably divergent.

S.W. testified that the two knew each other and, after she accepted Marble's invitation for a ride, he drove her to an isolated area where he threatened to shoot her, brandished a knife, removed her undergarments, and held the knife to her neck while he anally sodomized her. S.W. testified she obtained medical attention with the help of a friend and her mother after being allowed to get out of Marble's car. The medical evidence at trial showed S.W. had suffered injuries in the anal area consistent with her testimony.

Marble's version of the incident was that no rape occurred but that S.W. had propositioned him, that he was unable to perform any sexual act because of his tendency to become impotent after drinking alcohol, and that when he refused to pay her, she told him he would be sorry. Marble also contended that S.W. wanted to borrow money from him and that the money for the unconsummated act of prostitution was to be used by her to purchase cocaine.

Marble's wife testified as to his problems with impotency when he drinks and stated that Marble had been drinking on the day of the incident.

The first issue relates to questions by the prosecution as to why Marble sent a message to S.W. through a friend not to show up in court and testify. Defense counsel properly objected. The trial court allowed the question with the comment that the prosecuting attorney must be prepared to show factual support for the question if challenged. In response to a specific question, Marble denied sending any message personally or through a friend to S.W. not to appear and testify.

It is the general rule that counsel may not make assertions of fact in the form of questions to a witness absent a good faith basis for believing the asserted matters to be true. Graham, Evidence: Text, Rules, Illustrations and Problems, p. 436 (2d ed. 1989). A lawyer may not "in trial allude to any matter . . . that will not be supported by admissible evidence." MRPC 3.4(e) (1994 Kan. Ct. R. Annot. 352). However, reversal for failure to prove the underlying factual basis often requires that the record establish the lawyer knew the underlying facts to be false or that the lawyer acted in bad faith. See *Williams v. Mensey*, 785 F.2d 631, 638-39 (8th Cir. 1986). But, when it is the prosecution in a criminal case who makes assertions of fact against the accused during cross-examination, such an affirmative showing of bad faith is not universally required.

Marble contends it was reversible error for the prosecutor to question him about whether he attempted to intimidate a State's witness without presenting any evidence to support the charge. Although there was a proper objection, no demand was made by the defense to prove the foundation for the question or the basis upon which it was asked.

The extent of the prosecutor's duty to show the factual basis for a question about the accused's actions is not a well-settled issue in Kansas. Marble contends the ruling of *United States v. Silverstein*, 737 F. 2d 864 (10th Cir. 1984), that a prosecutor who asks the accused a question that implies the existence of a prejudicial fact must be prepared to prove that fact, requires reversal in this case.

In *Silverstein*, the prosecutor knew that he could not prove by independent evidence the substance of the alleged conversation, and the trial court was found to have erred in permitting the prosecutor to ask defendant the challenged questions. 737 F.2d at 868.

The State contends *Silverstein* is not controlling because here there was no evidence the State was unable to prove the facts its questions insinuated and, in fact, the State could have presented such proof had it been required to do so. There is support for this argument in *U.S. v. Jungles*, 903 F.2d 468 (7th Cir. 1990), where the court held: "[T]he government does not have a duty in every case to introduce the factual predicate for a potentially prejudicial question posed on cross-examination." 903 F.2d at 478. "[P]recedent [has established] that the government is not required in all situations to affirmatively prove the factual foundation underlying impeachment questions." 903 F.2d at 479.

Marble's situation differs from that in *Jungles* in that (1) he contemporaneously objected to the prosecutor's question and (2) there is absolutely no evidence in the record supporting a reasonable suspicion that the facts implied by the prosecutor's question were true. In a later opinion, the Seventh Circuit Court of Appeals considered *Jungles* and held:

"However, when, as in this case, the prosecution asks damning questions that go to a central issue in the case, these questions must be supported by evidence available or inferable [citation omitted] from the trial record. In such a situation, neither a prosecutor's good faith belief that some basis for her question exists nor reassurances to appellate courts drawn from information never presented below will suffice. [Citation omitted.]" *United States v. Elizondo*, 920 F.2d 1308, 1313 (7th Cir. 1990).

The North Carolina rule that the defendant must affirmatively show bad faith on the part of the prosecutor is much stronger support for the State's position. In *State v. Robertson*, 55 N.C. App. 659, 662, 286 S.E.2d 612 (1982), the court held:

"With respect to the one question as to whether the defendant had stolen a diamond ring, the record is silent as to whether the district attorney had any information about such an act. The burden is on the defendant on appeal to affirmatively show that the question was asked in bad faith, and this he has failed to do. This assignment of error has no merit."

See also *State v. Martin*, 322 N.C. 229, 236, 367 S.E.2d 618 (1988) (reversible error only if prosecutor acted in bad faith).

The holding requiring an affirmative showing of bad faith is not widely followed. The more common approach is to require that the record affirmatively illustrate a basis in fact for the challenged questioning; otherwise, bad faith will be imputed to the prosecution.

The Illinois court in *People v. Strong*, 151 Ill. App. 3d 28, 40-41, 502 N.E.2d 744 (1986), held that it was improper for a prosecutor to raise unsupported allegations of bad conduct by a defendant so as to substitute insinuation and innuendo for proof.

In Arizona, *State v. Smith*, 146 Ariz. 491, 495, 707 P.2d 289 (1985), the Supreme Court held that a prosecutor cannot impeach a defendant about prior conduct without offering evidence to prove the conduct. The basis for this rule is that questions with no basis in fact leave the minds of jurors damaged and prejudiced. See *People v. Pitts*, 223 Cal. App. 3d 606, 755, 273 Cal. Rptr. 757 (1990); *Gonzales v. State*, 572 So. 2d 999, 1000 (Fla. Dist. App. 1990); and *Hosford v. State*, 525 So. 2d 789, 792 (Miss. 1988).

In *Berger v. United States*, 295 U.S. 78, 87-88, 79 L. Ed. 1314, 55 S. Ct. 629 (1934), the prosecutor questioned a witness about a conversation he claimed to have had with her the previous day. After she denied that the conversation took place, the State made no effort subsequently to prove that it did. The Court reasoned that a prosecutor's duty is to refrain from improper methods calculated to produce a wrongful conviction just as it is to use every legitimate means to bring about a just one.

However, even though it may be improper for the State to imply facts in cross-examination which are not supported by the record, it does not absolutely follow that Marble's conviction must be overturned and he must be granted a new trial. We must also consider whether the error was harmless in that it did not prejudice Marble. See *Berger*, 295 U.S. at 89 (new trial required where evidence of guilt not "overwhelming"); *Silverstein*, 737 F.2d at 868 (no overwhelming evidence of guilt; credibility of witnesses was pivotal issue); *Smith*, 146 Ariz. at 496 (reversal not required because matter referred to was not at all prejudicial); *Hosford*, 525 So. 2d at 794

(where evidence was inconclusive question unsupported by facts in record required reversal); *People v. Jurczak*, 147 Ill. App. 3d 206, 217, 497 N.E.2d 1332 (1986) (reversal required in prior case specifically because defendant's credibility was pivotal to defense); *Strong*, 151 Ill. App. 3d at 41.

"When determining whether prosecutorial misconduct was prejudicial, factors that should be considered include: (1) Is the misconduct so gross and flagrant as to deny the accused a fair trial? (2) Do the remarks show ill will on the prosecutor's part? (3) Is the evidence against the defendant of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors? *State v. Carpenter*, 5 Kan. App. 2d 214, 218, 613 P.2d 966 (1980)." *State v. Perrigo*, 10 Kan. App. 2d 651, 654, 708 P.2d 987 (1985).

Marble contends he was denied his constitutional right to a fair trial. An error of constitutional magnitude is deemed harmless only if the appellate court is able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. White*, 246 Kan. 28, 37, 785 P.2d 950, *aff'd as modified* 246 Kan. 393, 789 P.2d 1175 (1990). The medical evidence adduced at trial clearly showed that S.W. suffered the trauma of which she complained. In addition, she reported being sodomized to other witnesses shortly after she claimed that it happened, at a time immediately after Marble admitted being with her. Although the veracity of both parties was a question for the jury to resolve, the objected-to question and answer was left favorable to Marble. It is only when the prosecutor's misconduct has seriously jeopardized the accused's credibility that it is most likely to warrant reversal. See *Silverstein*, 737 F.2d at 868; *People v. Nuccio*, 43 Ill. 2d 375, 396, 253 N.E.2d 353 (1969). However, in light of the overwhelming evidence corroborating S.W.'s testimony; the fact that her credibility was not enhanced by the allegation that someone may have asked her not to testify; and the fact the incident was an isolated part of the trial, and not magnified in any other testimony, we hold the error in this case is harmless.

After S.W. testified, the defense sought to have the trial court admit evidence she had a prior misdemeanor conviction for failure to appear. The trial court denied the request, and Marble argues this is reversible error.

K.S.A. 60-420 provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

The admission or exclusion of evidence is within the sound discretion of the trial court, subject to exclusionary rules. *State v. Friberg*, 252 Kan. 141, Syl. ¶ 5, 843 P.2d 218 (1992). However, reversible error can be predicated on the trial court erroneously excluding testimony proffered by the accused to impeach the credibility of the State's witness. *State v. Macomber*, 241 Kan. 154, Syl., 734 P.2d 1148 (1987).

Although K.S.A. 60-421 provides that "[e]vidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility," Marble contends that S.W.'s prior conviction for aggravated failure to appear is a crime involving dishonesty or false statement and admissible to challenge her credibility.

At trial, Marble proffered evidence that the witness had been convicted of failure to appear, not aggravated failure to appear. Therefore, the question before us is whether failure to appear can be said to be a crime involving dishonesty or false statement under the facts of this case.

"The phrase 'dishonesty or false statement' means crimes such as perjury, criminal fraud, embezzlement, forgery, or any other offense involving some element of deceit, untruthfulness, or lack of integrity in principle. The issue in determining the admissibility of prior convictions is whether dishonesty is an inherent element of the offense." *Bick v. Peat Marwick & Main*, 14 Kan. App. 2d 699, 711-12, 799 P.2d 94, *rev. denied* 247 Kan. 703 (1990).

Some convictions are admissible under K.S.A. 60-421 because the facts of the individual case involve dishonesty or false statement even though such dishonesty might not always be inherent in the crime. See *State v. Bowman*, 252 Kan. 883, Syl. ¶ 6, 850 P.2d 236 (1993).

Failure to appear, under K.S.A. 1994 Supp. 21-3813(a), is defined as

"intentionally incurring a forfeiture of an appearance bond and failing to surrender oneself within 30 days following the date of such forfeiture by one who is charged with a misdemeanor and has been released on bond for appearance before any court of this state . . . for trial or other proceeding prior to conviction, or intentionally incurring a forfeiture of an appearance bond and failing to surrender oneself within 30 days after such person's conviction of a misdemeanor has become final by one who has been released on an appearance bond by any court of this state."

The forfeiture of an appearance bond requires only the breach of some condition of the bond. K.S.A. 22-2807(1). These conditions might include restrictions on travel, association, place of abode, or "any other condition deemed reasonably necessary to assure appearance as required." K.S.A. 1994 Supp. 22-2802 (1)(b), (c). Although one might imagine facts under which the crime of failure to appear would involve dishonesty or false statement, it is not inherent in the offense as it is in perjury, forgery, or criminal fraud. "The distinction [between convictions admissible under K.S.A. 60-421 and those that are not] is found in asking whether in order to accomplish the criminal act and prove the criminal charge it was necessary to perform and prove deceit or fraud in some way." 4 Vernon's Kansas C. Civ. Proc. § 60-421, Authors' Comments, p. 285 (1965). There is no evidence in the record establishing that the witness' criminal act was performed by, and the conviction established through proof of, deceit or fraud. We hold that Marble has failed to meet his burden to affirmatively show some error in the trial court's ruling. See *State v. Richard*, 252 Kan. 872, 874, 850 P.2d 844 (1993).

On a break during the course of the State's case in chief, the trial court had an unrecorded conversation with a juror without counsel or the defendant present. The court promptly reported this conversation to both parties. In sum, the juror wanted to notify the court that she had remembered that she had seen the complaining witness before. The juror told the court that she had told no one else.

Although Marble raises the issue on appeal, he did not argue to the trial court that he was deprived of his constitutional rights by the ex parte communication between the judge and a juror.

"When constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review. *State v. Goss*, 245 Kan. 189, Syl. ¶ 4, 777 P.2d 781 (1989). Although ordinarily an appellate court will not consider an issue which has not been raised in the trial court or which has not been raised by the parties on appeal, the court does have the power to do so in exceptional circumstances, where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights. *State v. Puckett*, 230 Kan. 596, Syl. ¶ 1, 640 P.2d 1198 (1982)." *State v. Edwards*, 252 Kan. 860, 863-64, 852 P.2d 98 (1993).

While clearly an ex parte communication with a juror is improper, see *State v. Bowser*, 252 Kan. 582, 847 P.2d 1231 (1993), it appears in this case that Marble's conviction need not be overturned because the error was harmless. Marble contends that the deprivation of the right to counsel is never harmless, citing *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967). The resolve of the United State Supreme Court is clearly otherwise. See *Rushen v. Spain*, 464 U.S. 114, 118-119, 78 L. Ed. 2d 267, 104 S. Ct. 453 (1983) ("The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice."); *Crease v. State*, 252 Kan. 326, 335, 845 P.2d 27 (1993) (refusing to adopt rule that ex parte communication between judge and juror of which no record is made is presumed prejudicial).

Our Supreme Court has previously stated: "[B]efore we can declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial." *State v. White*, 246 Kan. at 37. In *Crease v. State*, 252 Kan. at 335, the judge communicated ex parte with a juror concerning a jury instruction, and no record was made. The judge brought the incident to the attention of trial counsel. Our Supreme Court found the error to be harmless beyond a reasonable doubt under the facts of that case. 252 Kan. at 336. See also *Edwards*, 252 Kan. at 864 (ex parte communication with venireman unrelated to trial was harmless error).

In this case, the improper communication concerned the fact that the juror had seen the victim before but did not know her.

The juror indicated that she had not discussed the issue with other jurors. The communication did not take place during deliberations so that the communication might have influenced the juror's interpretation of some instruction. See *United States v. United States Gypsum Co.*, 438 U.S. 422, 460-62, 57 L. Ed. 2d 854, 98 S. Ct. 2864 (1978); *Bowser*, 252 Kan. 582, Syl.¶ 1. Counsel were promptly notified of the incident and made no request to voir dire the juror. This is not a case like *Bowser*, where it seems apparent that the judge's conversation with the juror could have changed the outcome of the case. Rather, here an examination of the entire record establishes the ex parte communication had little, if any, likelihood of changing the verdict and any error was harmless beyond a reasonable doubt.

Marble's final issue on appeal regards his sentencing. It is a fundamental rule that we have jurisdiction only over those rulings identified in the notice of appeal. *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, Syl. ¶ 1, 869 P.2d 598 (1994). Marble's notice of appeal specifies only "his intention to appeal the decision of the jury." While the other three issues Marble has raised have some passing relationship to the jury's decision, the sentencing phase of the trial clearly is not included in his notice of appeal. We cannot consider the issue he has raised.

Moreover, a notice of appeal properly designating this issue would not have secured Marble relief. Regarding his contention that the trial court's failure to grant his downward departure was a result of partiality and prejudice and that the trial court improperly failed to make findings that compelling and substantial reasons to depart did not exist, we have recently held that "[i]f the court does not depart from the presumptive sentence, it is not required to state its reasons for refusal to depart." *State v. Mares*, 20 Kan. App. 2d 971, Syl. ¶ 2, 893 P.2d 296 (1995).

In *State v. Starks*, 20 Kan. App. 2d 179, 184, 885 P.2d 387 (1994), we held:

"[W]henever a defendant is sentenced to a presumptive sentence and there is no claim of error in regard to crime severity level or criminal history, there is a strong legislative presumption that the sentence is not the result of partiality, prejudice,

oppression, or corrupt motive. Defendant has failed to come forward with any evidence which would overcome that statutory presumption."

It is clear here that Marble's reasons fail to overcome the statutory presumption. We hold that no error existed in the sentences rendered.

Affirmed.