No. 74,234

STATE OF KANSAS, *Appellee*, v. JERRY D. HIGH, *Appellant*.

(922 P.2d 430)

Opinion filed July 12, 1996.

*Thomas Jacquinot*, of Jacquinot Law Office, of Lawrence, argued the cause and was on the brief for appellant.

*Gary Carl West*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Jerry D. High appeals his jury trial convictions for aggravated kidnapping (K.S.A. 21-3421 [Ensley 1988]),

first-degree murder (K.S.A. 1992 Supp. 21-3401), and felony theft (K.S.A. 21-3701 [Ensley 1988]). He was sentenced to consecutive prison terms of life, life, and 1 to 5 years.

The convictions of Donice Johnson and Joe Johnson, III, two codefendants, have previously been affirmed by this court. See *State v. Johnson*, 258 Kan. 100, 899 P.2d 484 (1995); *State v. Johnson*, 258 Kan. 607, 907 P.2d 140 (1995).

The victim of the crimes was Amanda Gardner. Ms. Gardner worked at the McDonald's restaurant in the Hypermart located in Topeka. She disappeared on her way home from work on April 25, 1993. Two days later her body was found in a field near the Kaw Valley Vocational Technical School in Topeka. The cause of death was determined to be strangulation, blunt trauma to the head, or a combination thereof. Codefendants Donice and Joe Johnson are sister and brother. Defendant was the boyfriend of Donice, who worked with Amanda. All three defendants were from Camden, New Jersey, and had been in Topeka a relatively short time. The basic motivation underlying the crimes was to obtain Ms. Gardner's automobile, which the three would use to return to New Jersey. Defendant was arrested in New Jersey on April 28, 1993, and returned to Kansas. Additional facts will be set forth as necessary for the discussion of particular issues.

For his first claim of error, defendant contends the district court erred in admitting the tape-recorded statement he gave to New Jersey law enforcement officers shortly after his arrest.

The tape is not included in the record before us. Defendant does not rely on the contents of the tape to support his claims in this issue. Rather, he contends the circumstances under which he talked to law enforcement officers render the tape inadmissible. Defendant does not contend he was physically coerced into talking. His version of the events leading to the tape varies from that of the officer's. Defendant states he had smoked marijuana prior to his arrest and was under the influence thereof. The interviewing officer testified he saw no sign of the defendant being intoxicated in any respect. There are discrepancies between defendant's and the officer's versions as to when the *Miranda* warnings were given, but defendant admits a *Miranda* warning was given before the tape

was made. Defendant advised the officer that his guardian was his aunt. She was contacted, came to the juvenile facility where defendant was being held, and waived her presence in writing prior to the tape being made. There was evidence of defendant's prior contact with the criminal justice system.

In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible shall be on the prosecution, and the required proof is by a preponderance of the evidence. When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at the trial, this court accepts that determination if it is supported by substantial competent evidence. *State v. Perkins*, 248 Kan. 760, 764, 811 P.2d 1142 (1991). See *State v. Cady*, 254 Kan. 393, 402-03, 867 P.2d 270 (1994); *State v. William*, 248 Kan. 389, 406, 409, 807 P.2d 1292, *cert. denied* 502 U.S. 837 (1991).

Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. *State v. Johnson*, 253 Kan. 75, 83-84, 853 P.2d 34 (1993). See *State v. Ferguson*, 254 Kan. 62, 83-86, 864 P.2d 693 (1993).

In addressing confessions made by juveniles, this court has stated:

"In *State v. Young*, 220 Kan. 541, 552 P.2d 905 (1976), we adopted a totality of the circumstances test for determining whether the confession of a juvenile is admissible, and held:

'A confession is not inadmissible merely because the person making it is a juvenile. The age of the juvenile, the length of the questioning, the juvenile's education, the juvenile's prior experience with the police, and the juvenile's

mental state are all factors to be considered in determining the voluntariness and admissibility of a juvenile's confession into evidence.' Syl. ¶ 2.

'Whether a confession was freely and voluntarily given is based upon a consideration of the totality of the circumstances, and where there is a genuine conflict in the evidence great reliance must be placed upon the finder of fact.' Syl. ¶ 6." *State v. Hooks*, 251 Kan. 755, 764, 840 P.2d 483 (1992).

The trial court held a full hearing on the admissibility of the tape. In making its ruling, the trial court reviewed the criteria to be applied as set forth in *State v. Young*, 220 Kan. 541, 552 P.2d 905 (1976). In making its ruling, the trial court stated, *inter alia*:

" 'Appellant's use of drugs does not prevent the trial court from finding the confession had been freely and voluntarily given.' [220 Kan. at 548.]

"Let's see, there was some others, length of questioning is important; educational level is important; mental ability. Well, all of those things, I think, go to the totality of the circumstances and here the totality of the circumstances are that— and also Court's listening to the tape, I think, bolsters these conclusions that defendant was lawfully and validly in custodial state, he was properly advised of his rights; the record is simply devoid of any evidence of coercion involved. . . . . There are some examples given in this case where persons held in custody for hours, questioned by teams of police officers; when one team became tired another team took over and that sort of thing. We don't have anything like that in this particular case. It's simply, to me, the evidence is that defendant was properly advised of his rights; the police went to extra lengths of obtaining a person that was his guardian and that individual gave a, a non-coerced permission for the police to question the defendant. And we get back simply to the conclusion that the statement was voluntary and not coerced and Court would so find and that same would be admissible, assuming the other matters as to foundation, other relevancy, are adduced properly."

The trial court heard the witnesses, including defendant, called at the suppression hearing. The trial court also heard the tape, something we have not had the opportunity to do by virtue of its absence from the record. The record presented supports the trial court's determination that the statement was freely and voluntarily given, and we find no error in its admission into evidence.

For his second issue, defendant contends he is entitled to a new trial by virtue of the trial court's questioning a juror *in camera* as to an anonymous telephone call.

On July 7, 1994, during the first full day of trial, the Shawnee County District Court Administrator's office received an anony-

mous phone call left on the voice mail during the lunch break. The defendant, his attorney, the State's attorneys, and the administrative assistant from the court administrator's office gathered in chambers after lunch. The trial court described the contents of the call as follows:

"Well, we are all assembled outside the presence of the jury for the purpose of considering an anonymous phone call received in the Court Administrator's office which I think could be best described as a, a message which purports to tell us that, that one of the jurors, namely Deana Smith, has some sort of, apparently, telephonic business contact with persons or I guess she says members of the Gardner family in a business sense through her employment with the Kansas Building Trades, and we, in discussing it, thought maybe—and I think the word 'Fund' is mentioned, and it probably does relate to workmen's compensation claims that the union, I guess, is processing in one way or another for employees at Gardner Floor."

The judge then asked for suggestions as to how to proceed. The State suggested that no further inquiry needed to be made as there was no indication of juror misconduct given the questions that were asked during voir dire. The defense requested that the juror be struck and that an alternate juror be used. The State then suggested, because there was no actual misconduct on the part of this juror, that the court question the juror in chambers without the parties being present.

The judge then proposed that he talk with this juror in chambers and make a record of the conversation. Afterwards, the judge would have the record read back for the parties. All agreed that a recording of the phone call would not be played for the juror, but that a copy of the recording would be made for the record. Although neither party affirmatively agreed to the judge's proposal, neither party objected to the plan. The court reviewed with the parties what questions he intended to ask the juror. The judge proposed that he tell the juror about receiving the phone call and that the call raised a question of whether or not she had communications with the Gardner family. He proposed to then discuss with the juror the content and context of those contacts if there were any.

After talking with the juror, the record of the conversation was read to the parties. The court asked for suggestions as to how to proceed. The State had no requests. Defense counsel stated, "Mr. High's position would be the same." The court found that any contact between this juror and the victim's family was "extremely low level contact" and that the juror's relationship with the Gardner family was "rather anonymous." The court declined to strike the juror off the panel. There were no objections raised by either party at this time and the trial proceeded.

Defendant asserts on appeal that this ex parte communication with the juror violated his constitutional right to be present at all critical phases of the trial. Defendant argues that because he did not specifically waive this right, he is entitled to a new trial.

We have previously held that a conference between a trial judge and a juror is a critical stage of the trial to which a defendant has a constitutional right to be present. However, defendant's failure to be present or to waive his appearance may constitute harmless error.

In *Crease v. State*, 252 Kan. 326, 845 P.2d 27 (1993), there was ex parte communication between the trial judge and one or more jurors who came into the judge's chambers very upset about the difficulty of the deliberations. No court reporter was present. Immediately after repeating the previously given instructions to the jurors, admonishing them to put their questions in writing, and instructing them to continue to deliberate, the judge reported the contact to the attorneys involved in the case. Neither side requested a mistrial or substitution of jurors. Defendant was not present at this meeting.

This court first noted that "[t]here is no dispute that an ex parte communication between Judge Hodge and at least one juror occurred and that this communication violated Crease's constitutional right to be present at all critical stages of the trial." 252 Kan. at 333.

The trial court then stated:

"The question before us is whether this constitutional error requires reversal.

'An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was

harmless beyond a reasonable doubt. [Citations omitted.] Thus, before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. [Citation omitted.]' *State v. White*, 246 Kan. 28, 37, 785 P.2d 950, *aff'd as modified* 246 Kan. 393, 789 P.2d 1175 (1990)." 252 Kan. at 334.

It would be difficult to conceive of a matter requiring a conference between a trial judge and a juror involving a factual basis of less significance. An anonymous telephone caller advised there was a possible business contact between the victim's family and the juror's place of employment. The trial judge, in essence, conducted a sort of supplemental voir dire after consultation with both counsel in the presence of the defendant. No objection was voiced to the plan as stated by the trial court. No complaint was voiced when the record of the conference was read to the parties. No facts came out of the meeting which cast any doubt on the juror's fitness to sit on the case. The trial court should have addressed the defendant personally as to whether he would waive his right to be present at the conference with the juror. The failure to do so was error. The facts of the ex parte conference herein involve a matter considerably less significant than shown in *Crease*. In that case, a juror, or jurors, were having problems reaching a verdict and application of the felony-murder rule. The actual verdict-reaching process was involved in *Crease*, but the error was held harmless.

We have absolutely no hesitancy in declaring, beyond a reasonable doubt, that the error had little, if any, likelihood of having changed the result of the trial.

For his final issue, defendant challenges the sufficiency of evidence supporting his conviction of first-degree murder and aggravated kidnapping. Approximately one page of the defendant's brief is devoted to this issue, and it is difficult to state specifically in what respect the evidence is claimed to be insufficient as to each count. Defendant appears to be contending that Joe Johnson was the individual who decided to kidnap and kill Ms. Gardner and, as felony murder was not charged, this renders the evidence insufficient to support the conviction.

" 'If the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence,

viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' " *State v. Timley*, 255 Kan. 286, 307-08, 875 P.2d 242 (1994) (quoting *State v. Grissom*, 251 Kan. 851, Syl. ¶ 4, 840 P.2d 1142 [1992]).

It would appear that the statement defendant gave in New Jersey which was admitted into evidence was very incriminating. As previously noted, the tape was not included in the record. An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. *State v. Richardson*, 256 Kan. 69, 84, 883 P.2d 1107 (1994). We have no alternative but to assume defendant's taped statement supports the convictions.

It is undisputed that Ms. Gardner was the victim of a brutal murder and aggravated kidnapping. Defendant and the two Johnsons planned to take Ms. Gardner's car from her by force. According to defendant's trial testimony, the three talked about tying her up and leaving her in the woods. Defendant stated Joe Johnson said he would kill Gardner. Ms. Gardner knew defendant and the two Johnsons. If left alive, she could easily identify them as the individuals who took her car.

It is undisputed that defendant was present in the vehicle when the various attacks occurred and that he hit the victim with a gun and participated in her strangulation. Defendant drove the car after the victim was initially choked and placed in the back seat. Joe Johnson testified defendant was telling him to kill Gardner as he, Johnson, was choking her the second time. (She had survived the first strangulation attempt.) Defendant helped carry the victim's body from the car.

We find no merit in defendant's claim that the evidence is insufficient to support the convictions herein of first-degree murder and aggravated kidnapping.

The judgment is affirmed.