(955 P.2d 1325)

No. 76,915

STATE OF KANSAS, *Appellee*, v. JOHN ARTHUR MCGINNES, *Appellant*.

Opinion filed March 6, 1998.

*Kirsten Ehlen* and *Rick Kittel,* assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Scott Rask* and *Brandi L. Dunning*, assistant county attorneys, *Robert Forer*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before KNUDSON, P.J., PIERRON and MARQUARDT, JJ.

PIERRON, J.: John Arthur McGinnes appeals his conviction for one count of aggravated indecent liberties with a child, a severity level 3 person felony, in violation of K.S.A. 21-3504(a)(3)(A).

McGinnes' arguments on appeal revolve around an inappropriate ex parte communication between the trial judge and the jury.

The parties do not dispute the facts, and McGinnes does not raise any issues challenging the sufficiency of the evidence.

In early July 1994, A.C., a 9-year-old girl, and her younger brother C.C. were visiting their grandmother J.H. One day during the visit, A.C. and C.C. visited J.H's next-door neighbor Jerry. At the time, McGinnes was at Jerry's house and had spent the night there.

C.C. returned to his grandmother's house after a short while. Jerry testified that McGinnes asked him to go buy a pack of cigarettes. Jerry took McGinnes' truck and went for cigarettes. He testified he was gone 8-10 minutes. Jerry testified that when he returned, A.C. said she was going home and left. Jerry stated everything seemed to be all right. After that day, Jerry often wondered why McGinnes sent him out to get cigarettes.

In March 1995, Jerry and McGinnes had a falling out. Shortly thereafter, Jerry and J.H. had a conversation. He told her it was strange that McGinnes had sent him out for cigarettes that day back in July 1994. Jerry told J.H. she should talk to A.C. about it.

J.H. told L.C., A.C.'s mother, of the conversation, and L.C. questioned A.C. about the incident. A.C. began to cry and told L.C. the man at Jerry's house had touched her private parts and then made her touch his private parts. L.C. went to the home of Police Chief Rocky Whinery, but he was not home. She called 911, and Whinery and Officer Floyd Ash responded. L.C. testified A.C. told Whinery and Ash that McGinnes had touched her private parts. Neither Whinery nor Ash testified at the trial.

Patricia Farris, a social worker with the Kansas Department of Social and Rehabilitation Services, interviewed A.C. Among other things, A.C. told her that the man named John at Jerry's house had touched her private parts and forced her to touch his private parts. The videotape of the entire interview with A.C. was shown to the jury.

McGinnes testified he never told Jerry to buy him cigarettes. Instead, McGinnes stated he asked Jerry if he wanted to get some cigarettes before McGinnes left because Jerry's truck would not

start. McGinnes testified he would never have asked Jerry to buy him cigarettes because the local store did not carry McGinnes' brand and he always had several packs when he visited the area. McGinnes conceded that he occasionally smoked a menthol cigarette, which could be bought locally, and Jerry had purchased menthol cigarettes for him in the past.

McGinnes testified and disputed much of what A.C. and Jerry had testified to. He denied any wrongdoing.

During the jury's deliberations, the trial judge, Charles J. Sell, happened to be outside the jury room. One of the jurors posed a question or made a statement concerning the fact that Whinery had not testified. Judge Sell, without receiving any indication the question was posed to him, told the jury they should not concern themselves with Whinery and they should go on about their deliberations.

Judge Sell immediately advised both defense counsel and the prosecutor about the communication. He told the attorneys he had overheard one of the jurors ask, "I wonder why we did not hear the testimony of Police Chief Rocky Whinery?" He responded, "Rocky Whinery is at the law enforcement academy and was unable to be present at this trial. You should not concern yourselves with his absence, as to bring him back for the trial would have interfered with his training, and his absence here should not concern you." Defense counsel indicated Judge Sell said the juror's question was not directed to the judge.

At that time, defense counsel raised no objection to what had occurred.

Sometime after the ex parte communication, the jury requested a readback of some testimony. After the readback, the judge gave the following unsolicited supplemental instruction without consulting with either counsel:

"The Court: All right. Let me just make a couple of comments. And, that is, you have heard the testimony of each of the witnesses. You have heard the Court's instructions as to the law which applies to this case, and you have those instructions with you in the jury room, and they are in writing. And you have been given the exhibits which have been offered and received in evidence.

"So I would ask you to focus your minds on the testimony that you have heard. I would ask you to re-read the instructions that I have given you, and I would ask you to look at the exhibits that have been admitted into evidence.

"And if you will concentrate on these things and on what has been presented and not allow yourselves to be diverted or not try to speculate on things that have not been presented, I think it will be helpful to you in arriving at a decision.

"So at this point, we'll let you go back into the jury room and continue your deliberations. And as soon as your lunch orders are received, that will be brought in to you, and you can go ahead with your discussions and so on while you're having lunch.

"And, again, if you have any questions, feel free to write those down, and they will be given to me. I will review them with the attorneys, and we'll try to get the appropriate answers for you. So thank you very much. You may now return to the jury room."

Immediately after the jury returned to the jury room, defense counsel moved for a mistrial. Defense counsel stated the court's supplemental instruction had the appearance of an *Allen* charge, although the court had not used those exact words. Defense counsel argued the court could not comment on such things after the jurors had begun their deliberations. The prosecution responded that the court simply reiterated the instructions previously given to the jury. The court denied the request for a mistrial.

The jury returned with a guilty verdict on the stated charge of aggravated indecent liberties with a child. Prior to sentencing, defense counsel filed a motion for a change of judge and a motion for a new trial. He based the motion for a new trial, in part, on Judge Sell's ex parte communication with the jury and the supplemental instruction. The change of judge motion was granted, and Judge John C. Gariglietti was assigned to hear the remainder of the case.

McGinnes obtained additional counsel, Edward Battitori, because his first attorney probably would have to testify at the hearing on the motion for a new trial. Battitori filed a supplemental motion for a new trial. The motion reiterated that the supplemental instruction should not have been given since there was no indication the jury was deadlocked, that the ex parte communication denied McGinnes the right to be present at all critical stages of the proceedings, and that the judge improperly influenced the jury.

In preparation for the hearing on the motion for a new trial, Battitori delivered a subpoena to Judge Sell to testify about his statements and actions during and after the ex parte communication. Judge Sell, with Battitori present, had a conference call with the prosecutor. After some discussion, the prosecutor said she would not object to hearsay statements concerning what Judge Sell had said if the judge was not required to be at the motion for a new trial. Judge Sell's reason for not wanting to appear was that his son had been in a car accident the night before and he was going to spend time with his family.

After the conference call, Judge Sell telephoned Judge Gariglietti and explained the situation. Judge Gariglietti stated he would release Judge Sell from any subpoena and allow a deposition later, if necessary.

After a hearing on the matter, the district court denied McGinnes' motion for a new trial. The court found defense counsel was informed immediately of the ex parte communication but no objection was made and defendant made no effort to voir dire the jury. Additionally, the court could not find anything prejudicial or objectionable in the trial court's supplemental instruction, and even after the instruction, defense counsel again made no effort to voir dire the jury to see if a problem existed.

The district court held that McGinnes had the burden to prove he was prejudiced by the trial judge's ex parte communication. The court recognized McGinnes' constitutional rights, but concluded he had presented *no* evidence that the errors substantially prejudiced his rights.

Defense counsel stated 11 of the jurors said Judge Sell's statements had no influence on their decision. The only possible prejudice indicated by defense counsel was the curious affidavit of a stepson of the 12th juror (who apparently had left Kansas) stating that the juror had made certain statements about Judge Sell's influence over the vote to convict or acquit. The court stated the possibility of error would not satisfy the burden of proving prejudice.

The district court subsequently sentenced McGinnes to 66 months' incarceration.

McGinnes first argues he was denied his constitutional right to be present at all critical stages of his trial and his constitutional right to counsel when the trial judge initiated the ex parte communication with the jury.

In his well-written brief, McGinnes correctly points out that Kansas courts have applied the harmless error rule in determining whether the denial of a defendant's right to be present at all critical stages of the trial prejudiced the defendant. See *State v. Scales*, 261 Kan. 734, 738, 933 P.2d 737 (1997); *State v. High*, 260 Kan. 480, 485, 922 P.2d 430 (1996); *State v. Bowser*, 252 Kan. 582, 588, 847 P.2d 1231 (1993); *Crease v. State*, 252 Kan. 326, 333, 845 P.2d 27 (1993); *State v. Marble*, 21 Kan. App. 2d 509, 518, 901 P.2d 521, *rev. denied* 258 Kan. 861 (1995).

McGinnes argues this court cannot hold Judge Sell's ex parte communication to be harmless error. He claims to have suffered prejudice as a result of the communication. He contends that Judge Sell's standing outside the jury room during deliberations and then engaging in an ex parte communication created an inference of prejudice. He insists that since the jurors were discussing Whinery's failure to testify, it must have been important to them. He argues that Judge Sell, in a position of high authority in the eyes of the jury, essentially told the jury that Whinery's testimony was of no concern because whatever the jury heard from other witnesses about A.C.'s allegations was essentially true.

McGinnes also claims Judge Sell usurped the role of the jury by commenting on the evidence. He also claims Judge Sell's failure to consult with counsel before talking with the jury denied him his right to counsel.

McGinnes distinguishes several cases where the appellate court has held ex parte communication with a jury to be harmless error. In *High*, 260 Kan. at 484-85, the court recorded the ex parte communication on the record and then read it back to all parties. In *Crease*, 252 Kan. at 336, there was overwhelming evidence in the form of the defendant's confession to committing the crimes. In *Marble*, 21 Kan. App. 2d at 519, the ex parte communication did not occur during the jury's deliberations and did not involve a discussion of the facts or merits of the case.

"An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial." *State v. McClanahan*, 259 Kan. 86, 102, 910 P.2d 193 (1996).

There is no dispute that an ex parte communication between Judge Sell and the jury occurred and that this communication violated McGinnes' constitutional right to be present at all critical stages of the trial. This constitutional right is rooted in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *United States v. Gagnon*, 470 U.S. 522, 526, 84 L. Ed. 2d 486, 105 S. Ct. 1482, *reh. denied* 471 U.S. 1112 (1985).

Kansas has codified the defendant's right to be present in K.S.A. 22-3405. Kansas courts have held that "[a] conference between a trial judge and a juror is a critical stage of the proceeding requiring the presence of the defendant." *State v. Lovely*, 237 Kan. 838, Syl. ¶ 3, 703 P.2d 828 (1985); see also *State v. Garcia*, 233 Kan. 589, Syl. ¶ 2, 664 P.2d 1343 (1983) (a defendant's constitutional and statutory right to be present includes the right to be present "whenever the court communicates with the jury").

Additionally, K.S.A. 22-3420(3) requires that once the jury has begun deliberations, any questions from the jury concerning the law or evidence pertaining to the case must be answered in open court in the defendant's presence, unless the defendant is absent voluntarily. McGinnes was not absent voluntarily.

The *Marble* court stated:

"An unrecorded ex parte communication between a juror and the trial court is improper but can be harmless error where, after being brought to the attention of trial counsel, there was no request to voir dire the juror and no indication that it affected other jurors, and the error had little, if any, likelihood of changing the verdict in the case." 21 Kan. App. 2d 509, Syl. ¶ 13.

"Allegations of judicial misconduct must be decided on the particular facts and circumstances of each case. Reversal is required only when the appellant has shown the conduct prejudiced his

substantial rights." *State v. Walker*, 252 Kan. 279, 290, 845 P.2d 1 (1993).

We believe no actual prejudice has been shown. It is of importance in the factual situation here that the nonappearance of Whinery was apparently not an issue of significance. McGinnes does not claim, and the record does not reflect, that Whinery's testimony, or lack thereof, was of concern to the defense. Had the defense wanted Whinery present for the trial, he would have been subject to compulsory process. Also, the defense did not argue at trial to the jury or to the court that Whinery's not testifying was in any way significant.

Although a hypothetical argument can be made now that reference could have been made by defense counsel to Whinery's not testifying, it was not done, and the record does not establish that it would have been a fruitful argument. The key issue was the credibility of McGinnes and A.C. There is no indication that Whinery's testimony was a significant issue. An offhand remark by a juror does not change that fact, particularly when we consider the responses given by the jury to the defense's inquiry on the issue.

We have no hesitancy in declaring, beyond a reasonable doubt, that the error had little, if any, likelihood of having changed the result of the trial.

This finding in no way endorses the process followed by the trial judge, which courted disaster.

Next, McGinnes argues the trial court committed reversible error and violated his right to counsel by giving an unsolicited supplemental instruction.

McGinnes correctly states the supplemental instruction was not necessary and was done without prior consultation with counsel. It was not in response to any question by the jury. McGinnes contends Judge Sell would never have given the supplemental instruction had he not previously had the ex parte communication with the jury. He argues that the only effect of the supplemental instruction was to remind the jury of the ex parte communication and the implication that Whinery's testimony was of no concern because whatever the jury heard from other witnesses about A.C.'s allegations was essentially true.

McGinnes also insists the evidence of guilt in this case was not overwhelming, which is necessary to allow this court to uphold the conviction under a harmless error analysis. He states the case was a credibility battle, there was a significant delay in reporting the offense, there was no physical or medical evidence to support the crime, and the victim "lied" in certain portions of her testimony, which was pointed out to the jury.

We are not persuaded by McGinnes' claims of prejudice from the supplemental instruction. A district court should not give the jury supplemental instructions without consulting with both counsel. However, under the harmless error analysis set forth in the discussion of the first issue, McGinnes has failed to demonstrate how he was substantially prejudiced by the district court's error. As the State argues, the supplemental instruction simply reiterated several of the instructions given during the court's charge to the jury.

At oral argument on this appeal, we explored this issue in depth. Had the jury requested through an appropriate communication with the court to know why Whinery had not testified, a reply similar to the two comments by the trial judge would have been appropriate. Therefore, we do not find prejudice.

Again, our failure to find reversible error is not an endorsement of the trial court's inappropriate actions. Communications with and instructions to the jury by the court are matters of great delicacy. Established procedures for doing so should be very carefully followed.

Last, McGinnes argues he had a constitutional right to compel Judge Sell to appear and testify at the hearing on the motion for a new trial. He argues that when Judge Gariglietti released Judge Sell from the subpoena, he was denied his right to compulsory process. McGinnes contends he was prevented from questioning Judge Sell under oath about what took place during the ex parte communication.

McGinnes also states that when a witness is available, hearsay or other secondhand information is no substitute for a witness' live testimony from the witness stand under oath. He argues Judge Gariglietti's phone call with Judge Sell is no substitute for Judge

Sell's live testimony. McGinnes cites *State v. Miller*, 20 Kan. App. 2d 378, 386, 888 P.2d 399 (1995), where the court held that absent good cause, it was error to use affidavits and not to have live testimony in a probation revocation hearing. He contends Judge Sell's live testimony is crucial in determining whether he was prejudiced by the ex parte communication.

The State responds that McGinnes failed to preserve this issue for appeal by not objecting to or taking exception to Judge Gariglietti's releasing Judge Sell from the subpoena. See *State v. Boyd*, 257 Kan. 82, 89, 891 P.2d 358 (1995) (timely objection necessary to give the trial court an opportunity to correct alleged trial errors and to preserve the issue for appeal). In the alternative, the State argues defense counsel's actions indicated he agreed to release Judge Sell from the subpoena and now cannot complain on appeal.

We find no error in Judge Gariglietti's releasing Judge Sell from the subpoena. Judge Sell set forth sufficient evidence of a family emergency as to why he would have great difficulty in attending the hearing on the motion for a new trial. Furthermore, the prosecution agreed, and held true to that agreement at the hearing, to not object to any of the hearsay statements made about Judge Sell's actions. The evidence or content of the ex parte communication was sufficiently brought into evidence.

The most compelling point is that if Judge Sell's presence was actually crucial, McGinnes would certainly have been within his rights to request a continuance to a time when Judge Sell's family emergency was over. From the record, we see no reason to believe that his appearance was crucial, and if it was, it could have been obtained.

Affirmed.

KNUDSON, J., dissenting: It is impossible for me to conclude that John McGinnes received a fair trial. He was deprived of fundamental constitutional protections that cannot be swept away under a harmless error analysis. Not only was there an ex parte communication between the trial judge and the jury that drove a stake into the integrity of the process, the damage was compounded by

a supplemental jury instruction that made tatters of the concept of reasonable doubt.

This case boiled down to whether the jury was going to believe A.C. beyond a reasonable doubt. Her credibility was a central issue for the jury.

A.C. did not accuse McGinnes until 9 months after the incident. Aside from her mother, Police Chief Rocky Whinery and Officer Floyd Ash were the first persons in authority to interview A.C. What A.C. told them could be crucial in assessing her credibility. However, neither Whinery nor Ash testified at trial. It is entirely understandable that during jury deliberations the questions arose: Where is Whinery and why did he not testify?

It is not clear where Judge Sell was during the jury deliberations or exactly how he was told the jury was discussing why Whinery did not testify. No record was made immediately after the ex parte communication or at any later time. We are only given the recollection of McGinnes' attorney when he testified at the motion for new trial. He testified:

"Judge Sell advised Ms. Dunning [assistant county attorney] and I about this situation where he was outside of the door, that he overheard one of the witnesses [sic] ask, 'I wonder why we did not hear the testimony of Police Chief Rocky Whinery?' and then Judge Sell told us or advised us that he had advised the jurors at that time that 'Rocky Whinery is at the law enforcement academy and was unable to be present at this trial. You should not concern yourselves with his absence, as to bring him back for the trial would have interfered with his training, and his absence here should not concern you.'"

The above ex parte comments are tantamount to a jury instruction admonishing the jury not to concern itself with the omission of Whinery's testimony or why he was not called as a witness. Thus, there is not only a denial of McGinnes' right to be present and his right of counsel, but also the comments are substantive misstatements of law that have a direct impact upon the issue of A.C.'s credibility and the fundamental concept of reasonable doubt.

The majority concludes Judge Sell's ex parte comments were harmless error because there has been no showing of actual prejudice. In reaching its conclusion the majority seemingly treats the issue as one of judicial misconduct that does not directly implicate

the substantive issues being considered by the jury. If that were the case, I would agree that our law requires that an appellant demonstrate the conduct prejudiced his substantial rights. See *State v. Walker,* 252 Kan. 279, 290 845 P.2d 1 (1993). However, that is not all that occurred in the case now before us. As I have already stated, Judge Sell's ex parte comments conveyed erroneous substantive instructions to the jury that denied McGinnes due process of law. Consequently, prejudice to the defendant is built into the process itself, and it is impossible to conclude by any objective standard that the error was harmless.

I turn next to Judge Sell's unsolicited supplemental instruction to the jury that the majority considers to be a benign restatement of instructions of law already given to the jury.

L.C. is A.C.'s mother. Her testimony focused primarily upon A.C. telling her what had happened. After the jury had deliberated for several hours (and after Judge Sell had told them not to be concerned with the missing testimony of Whinery), a request was made for a complete readback of L.C.'s testimony. My conclusion is that there were jurors who wanted to know exactly what A.C. had told her mother.

Immediately after the readback, Judge Sell gave the following unsolicited supplemental instruction to the jury:

"Let me just make a couple of comments. And, that is, you have heard the testimony of each of the witnesses. You have heard the Court's instructions as to the law which applies to this case, and you have those instructions with you in the jury room, and they are in writing. And you have been given the exhibits which have been offered and received in evidence.

"*So I would ask you to focus your minds on the testimony that you have heard.* I would ask you to re-read the instructions that I have given you, and I would ask you to look at the exhibits that have been admitted into evidence.

"*And if you will concentrate on these things and on what has been presented and not allow yourselves to be diverted or not try to speculate on things that have not been presented,* I think it will be helpful to you in arriving at a decision." (Emphasis added.)

There is no doubt in my mind that the above supplemental instruction was related to the previous ex parte communication Judge Sell had with the jury and compounded the damage that had been done. Additionally, the supplemental instruction insidiously shifts

the burden of proof by requiring a defendant to present evidence to establish reasonable doubt. Consequently, I conclude the supplemental instruction was erroneous.

The error in this trial was substantial and cumulative. The process by which a jury reaches a verdict was directly and adversely implicated by the trial error. One cannot reasonably or objectively conclude the error was harmless. I would reverse McGinnes' conviction and grant him a new trial.