OPINION OF THE COURT
Bellacosa, J.
A large group of youths participated in a series of violent felony assaults on the night of April 19, 1989 in Central Park. Defendant was prosecuted and convicted after a jury trial for rape and robbery in the first degree, and other crimes, in connection with the most serious crimes which were inflicted on a victim, identified only as "the Central Park jogger”. He was sentenced as a juvenile offender. The Appellate Division affirmed his conviction (187 AD2d 363). Defendant appeals by leave of a Judge of this Court, and we affirm the order upholding the conviction.
Defendant asserts that his inculpatory statements concerning his participation, made to investigating police officers at the Manhattan precinct house the night following the crime spree, should have been suppressed. Defendant’s argument rests principally on alleged police misconduct in isolating him, during the questioning, from his mother and other "supportive adults” — an aunt and his "Big Brother” — who attempted to see him at the station house.
*54 Defendant was 15 years of age when he committed the crimes at issue and when he was questioned. Evidence in the record supports the findings of the trial court at the suppression stage, which were explicitly analyzed and accepted by the Appellate Division in its unanimous affirmance of the conviction. Defendant deceived the police by asserting that he was 16 years of age and using false identification to buttress that assertion. There is no evidence that the police employed deception or trickery of the kind found objectionable by this Court, because of a design to unlawfully isolate a defendant during questioning (see, People v Townsend, 33 NY2d 37). The officers here made known to defendant’s family precisely where they were taking defendant, a fact unassailably confirmed by the appearance of family members at that designated precinct. Nor did defendant, after being advised of his rights, or anyone on his behalf request assistance of counsel (see, People v Bevilacqua, 45 NY2d 508). Notably, all police questioning ceased when the fact of defendant’s true age, 15, finally emerged from his mother and was verified.
L
On the evening of April 19, 1989, a group of approximately 30 youths assaulted nine persons in Central Park. The most vicious crimes were committed against a 30-year-old woman, "the Central Park jogger”. As she was jogging in the northern part of Central Park, she was grabbed by one of the youths and knocked to the ground. The evidentiary descriptions of the attack and the findings by the trial court are graphic and sufficiently well known as to require no recounting here. Only the prosecution of defendant for the crimes he committed against "the Central Park jogger” is at issue on this appeal.
On the night of the criminal incidents, the police captured several youths who implicated defendant and described him as being 16 or 17 years old. The next night, April 20, at about 10:30 p.m., the police went to defendant’s apartment to follow up their investigation. In response to an officer’s question, the defendant also stated that he was 16 years of age and produced a school transit pass that presented him as 16. This assertion was not contradicted by his sister, brother or friends, all of whom were present at the time.
The officers informed defendant’s sister of the number and location of their precinct and requested that defendant accompany them there. He complied. At the station house, after *55 again producing his transit pass which stated he was 16, defendant was given complete Miranda warnings. Defendant invoked none of the recited protections and chose instead to give a detailed statement implicating himself in two of the attacks under investigation, including specifically the attack on "the Central Park jogger”. While defendant was being questioned, his aunt and "Big Brother”, an Assistant United States Attorney, arrived at the precinct. Their requests to see defendant were denied on the grounds that neither was a "parent or guardian” and the "Big Brother,” by his own account, was not present in any professional representative capacity.
Defendant’s mother arrived at the station house some time after midnight. She, too, was initially denied access to her son. However, when she informed the detectives that defendant was actually only 15 years of age, the officers went to the interview room, rechecked defendant’s transit pass and asked him how old he was. For the first time, defendant corrected his earlier misrepresentations and said he was 15. From that point, as the Appellate Division stated, the police "scrupulously honored the request of his mother that questioning cease” (187 AD2d 363, 364, supra). Defendant then was permitted to meet with his mother.
IL
Defendant’s argument for suppression of his inculpatory statements made prior to his being allowed to meet with his mother, on the ground that he was unlawfully isolated from those "supportive adults” who attempted to see him, finds no support in the record evidence under any cognizable legal theory that would afford him that relief. A showing that the isolation resulted from official deception or trickery is required before suppression becomes available under this theory (People v Townsend, 33 NY2d 37, supra). In Townsend, this Court stated, "it is impermissible for the police to use a confession, even if it be otherwise voluntary, obtained from a 17-year-old defendant when, in the course of extracting such confession, they have sealed off the most likely avenue by which the assistance of counsel may reach him by means of deception and trickery” (id., at 41 [emphasis added]).
Similarly, in People v Bevilacqua (45 NY2d 508, supra), the police ignored or rejected the 18-year-old defendant’s request to telephone his mother and concealed the location of defen *56 dant’s whereabouts from his attorney, ignoring his instructions not to question the defendant. This Court held that the misconduct of the police, which was "seemingly planned and deliberate,” mandated suppression of the defendant’s written and oral confessions despite the fact that defendant was not a legal minor (id., at 514). The particular reliance on this case by the dissent overlooks these many critical distinctions (dissenting opn, at 61).
Moreover, where there has been "[n]o attempt * * * by the police to conceal the presence of the defendant or to deceive the family,” we have held that "a refusal by the police to allow a parent to see [a] child [does] not * * * render any subsequently obtained confession per se inadmissible” (People v Townsend, 33 NY2d 37, 42, supra; see also, People v Taylor, 16 NY2d 1038; People v Hocking, 15 NY2d 973).
Defendant acknowledges that the police did not engage in deception or trickery to isolate him from his mother or the other adults who attempted to see him. Defendant’s sister was told his whereabouts, and his mother was prevented from seeing him when she first arrived at the station house only because the police reasonably believed that they were dealing with an adult and, therefore, were lawfully questioning him alone. We conclude that appellant’s argument in this regard provides no basis for disturbing the lower courts’ denial of suppression on the legal theory or on the undisturbed supportable evidentiary record (see, People v Winchell, 64 NY2d 826, 827).
Defendant unpersuasively also urges that his statements should be suppressed because the police violated CPL 140.20 (6). After a warrantless arrest of a juvenile offender, the police are required to "immediately notify the parent or other person legally responsible for [the juvenile’s] care or the person with whom [the juvenile] is domiciled, that the juvenile offender has been arrested, and the location of the facility where [the juvenile] is being detained” (CPL 140.20 [6]). For the crimes at issue here, a perpetrator is designated a juvenile offender up to the age of 16 (CPL 1.20 [42]). It was ultimately confirmed that defendant was 15 at the time of the crimes and questioning and could, therefore, be prosecuted as a juvenile offender.
This Court has held that failure to strictly comply with the analogous notification requirement of the Family Court Act (Family Ct Act § 305.2 [3] [dealing with the different and lower *57 level of responsibility of juvenile delinquents]) does not necessarily require suppression where a good-faith effort at compliance has been made. In Matter of Emilio M. (37 NY2d 173), the juvenile was arrested, identified by the victim and taken to the station house before his mother was notified. He was then questioned before she arrived at the station house. After her arrival, the juvenile was re-Mirandized and requestioned in her presence and his statement was reduced to writing. This Court held that the procedure employed "did not constitute such noncompliance as to require suppression of [the juvenile’s] signed statement” (id., at 176). "[W]hile it [was] true that no call was put through to respondent’s mother until arrival at the station house, the call was made without undue delay and there was reasonable justification for such delay as did occur” (id., at 176 [emphasis added]). Thus, we held that "[i]n these circumstances * * * there was compliance with [the] statutory mandate” (id., at 176). Here, there was initially no arrest; rather, defendant voluntarily accompanied the police to the precinct. Defendant provided them with "reasonable justification” to believe he was legally an adult. Moreover, even if during the questioning the defendant’s subjective state of mind or sense of freedom to leave changed because of his own inculpating statements, suppression is not even available under the analogous Family Court Act provision construed in Emilio M. We said there:
"[S]ince there [was] no evidence of willful or negligent disregard of the statutory requirements in this case and no evidence of inattention to such requirements as a pattern or practice, no sufficiently useful prophylactic purpose would be served in penalizing the police for failure to conform to the terms of the statute taken literally” (id., at 177).
In an equally cogent application of that rationale to this criminal juvenile offender situation, the police here repeatedly sought to ascertain defendant’s correct age. Defendant’s own repeated affirmative deceptions, which led the police to believe that he was a legal adult, supplied a lawful basis to question him without parental or guardian notification or presence so long as adult protections, like Miranda warnings, were attended to, which they were. There is ample evidence and findings by the courts below, with appropriate fact-reviewing powers, that the police diligently attempted to comply with all statutory and constitutional responsibilities, and actually did *58 so, when lawfully required within the framework of the fast-developing investigation. In contradistinction, the dissent makes significant inferences and fact-like assertions concerning seriously improper motivations of the investigating law enforcement officials (dissenting opn, at 63, 64), despite this Court’s lack of power to engage in such analysis (NY Const, art VI, § 3 [a]; see also, People v Centono, 76 NY2d 837, 838).
Notably, as to other persons being dealt with during this intense investigation, when the police were aware that an individual they had detained was under 16, they waited. In at least one case, they waited several hours until the juvenile’s parents were present before conducting any questioning. Appellant’s questioning, without additional youth protective protocols, was driven by his deception of the police at the outset that he was of adult age. On this record, we cannot say that he was deprived of any rights he was entitled to or claimed.
Defendant’s other arguments have been reviewed. They are without merit and do not affect the substantive or procedural regularity or correctness of the lower courts’ decisions upholding this juvenile offender’s conviction.
Accordingly, the order of the Appellate Division should be affirmed.