■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC PAGE, Appellant. [638 NYS2d 985] —Cardona, P. J.

Defendant's convictions stem from an incident which occurred at the home of Marvin Grimsley where Ralph (Rafael) Vilaneuva was shot to death and Grimsley, also shot, sustained serious wounds. On appeal, defendant contends that the trial evidence was legally insufficient to establish guilt. We disagree. Viewing the evidence in a light most favorable to the People, the People's proof sufficiently provided a valid line of reasoning and permissible inferences from which a jury could find guilt beyond a reasonable doubt (*see, People v Bleakley,* 69 NY2d 490; *People v Klein,* 221 AD2d 803). Here, it was necessary to show that defendant intentionally caused Vilaneuva's death by shooting him with a handgun (*see,* Penal Law § 125.25 [1]), intentionally attempted to cause Grimsley's death by shooting him with a handgun (*see,* Penal Law §§ 110.00, 125.25 [1]) and intentionally caused serious physical injury to Grimsley by shooting him with a deadly weapon consisting of a handgun (*see,* Penal Law § 120.10 [1]). The People's proof established every element of the crimes.

At trial, Grimsley testified that he bought crack cocaine from defendant in the afternoon prior to the shooting. He did not have enough money and defendant told him he would collect it later. Grimsley returned home at approximately 4:00 P.M. He and Vilaneuva then smoked crack together. At approximately 6:00 P.M. defendant arrived to collect the money. Instead, he sold more crack to Grimsley and promised to return later to collect the money. Both Vilaneuva and Grimsley smoked the second piece of crack. Defendant again returned with another individual. Grimsley did not have the money and defendant ordered him to step outside. A scuffle ensued which was broken up by Grimsley's wife. Grimsley went back inside. Defendant again returned, however, this time with two other individuals. Grimsley let them in and defendant pulled out a revolver. He asked Vilaneuva for "yeah-yo", which Grimsley thought meant crack. Vilaneuva said it was all gone and turned to walk away. Defendant then said, "You think I'm playing? Do you want to die?", and shot Vilaneuva in the back. Defendant then pulled the trigger on Grimsley. The gun misfired once but the second time fired and wounded Grimsley. The incident occurred sometime after midnight. Medical testimony verified that Vilaneuva died due to a massive hemorrhage caused by a bullet through the aorta and that Grimsley suffered a bullet wound in his lower chest and a slug to his left side. The surgeon who operated on Grimsley testified that his injuries were life-threatening. Under these circumstances, we find that legal sufficiency was established.

In addition, upon the exercise of our factual review power, we conclude that the jury's verdict was not against the weight of the evidence (*see, People v Bleakley, supra; People v Parker,* 220 AD2d 815). Defendant claims that Grimsley's testimony was unworthy of belief because Grimsley had admittedly been smoking crack for several hours prior to the murder. Although Grimsley's testimony was the only direct evidence identifying defendant as the shooter, Grimsley testified that he had at least four separate opportunities to get a close look at defendant over a short period of time. Expert medical testimony also indicated that even accepting that an individual, who was a regular cocaine smoker, had smoked cocaine over an extended period of time, there was no reason why that person could not perceive and remember what another person looked like. Grimsley also participated in a police surveillance of the area where he had initially purchased the crack from defendant and after approximately two hours he spotted defendant on the street and identified him as the shooter. The question of Grimsley's credibility was for the jury to resolve (*see, People v*

*Day*, 215 AD2d 894, *lv denied* 86 NY2d 793). Deference must be accorded a jury's determination since it has the opportunity to hear the testimony and observe the demeanor of witnesses (*see, People v Bleakley, supra; People v Van Steenburg*, 221 AD2d 799).

Defendant next claims that the statement he gave to police after he received his *Miranda* warnings should have been suppressed because he was improperly isolated from his family at the police station. Defendant was 16 years old at the time. He was legally an adult (*see, People v Styles*, 208 AD2d 779, *lv denied* 84 NY2d 1016) and there was no requirement that his family be present during police questioning (*see, People v Washington*, 209 AD2d 817, *lv denied* 85 NY2d 944). It is also true, however, that the police are required to "exercise greater care to insure that the rights of youthful suspects are vigilantly observed" (*People v Hall*, 125 AD2d 698, 701; *see, People v Kern*, 149 AD2d 187, 217, *affd* 75 NY2d 638). Nevertheless, before suppression becomes available under this theory, there must be a "showing that the isolation resulted from official deception or trickery" (*People v Salaam*, 83 NY2d 51, 55; *see, People v Townsend*, 33 NY2d 37). Defendant's mother and brother claimed that they had various contacts with the police station after defendant had been taken into custody, but were informed that he was not there. There is no evidence in the record, however, to show that any of the police officers involved deliberately concealed defendant's location from his mother or his brother (*see, People v Salaam, supra*). When the mother called the detective unit and spoke with the officer who had been questioning defendant, she was told that he had been taken into custody. Moreover, defendant did not ask for his family during his interrogation and there was no evidence that the police discouraged him from doing so (*see, People v Crimmins*, 64 NY2d 1072; *cf., People v Bevilacqua*, 45 NY2d 508). He was also given his *Miranda* warnings and, as soon as he requested an attorney all questioning ceased (*see, People v Salaam, supra*). Thus, we cannot say that County Court erred in refusing defendant's request for suppression.

Turning to County Court's limitation of expert testimony proffered by the defense, we note that the qualification of a witness to testify as an expert rests within the sound discretion of the trial court and its determination will not be disturbed in the absence of serious mistake, error of law or an abuse of discretion (*see, Werner v Sun Oil Co.*, 65 NY2d 839, 840). The trial court must be satisfied that the proposed expert has the required skill, training, education, knowledge and ex-

perience from which it can be assumed that the information imparted will be reliable (*see, Matter of Enu v Sobol*, 208 AD2d 1123). Here, the two proposed witnesses were expected to testify as to the adverse effect of cocaine or crack on an individual's ability to accurately perceive events while using such drugs. Neither witness was a physician and, while County Court acknowledged that both witnesses had many years of experience in dealing with drug addiction, the court disqualified them on the basis that the testimony defendant was attempting to elicit required a witness with a medical or psychiatric background who could explain the mental functions of those addicted to crack. Based on the record before us, we cannot say that County Court abused its discretion in excluding the witnesses. We also note that another defense expert who was a physician was permitted to testify as to the effects of cocaine on one's mental state. Defendant was, thus, able to put forth evidence to rebut the People's expert.

We have examined defendant's contention that he was deprived of effective assistance of counsel and find it lacking in merit. The record indicates that defendant received meaningful representation (*see, People v Rivera*, 71 NY2d 705; *People v Baldi*, 54 NY2d 137). Defense counsel actively participated in the proceedings. Defendant points to the failure to cross-examine certain witnesses and also argues that, with respect to the witnesses who were cross-examined, it was inadequate. This is a disagreement with the strategies and tactics of counsel which, in hindsight, may have been unsuccessful but, nonetheless, do not rise to a level of ineffective assistance of counsel. The record also offers no support for defendant's claim that defense counsel improperly presented his alibi testimony or should have called other witnesses for additional alibi support. Defendant's remaining assertions in this regard are without merit.

Mercure, Crew III, White and Casey, JJ., concur. Ordered that the judgment is affirmed.