Justice BENDER
delivered the Opinion of the Court.
Colorado has a statute that requires that no statements of a juvenile resulting from custodial interrogation shall be admissible in evidence against that juvenile unless a parental figure was present during the interrogation and advised of the juvenile’s Miranda rights. In this case, we decide whether this statute must be followed when a juvenile lies to police about his age, thereby causing them to believe that he is an adult. Applying the plain language of the statute, we hold that the juvenile’s statements are not admissible as evidence against him. Therefore, we reverse the court of appeals decision in People v. Nicholas, 950 P.2d 634 (Colo.App.1997), and remand this ease for a new trial.
I. FACTS AND PROCEEDINGS BELOW
According to evidence presented at trial, Dameon Nicholas and Allan Lucero were involved in the murder of an elderly man in the parking lot of a pharmacy in Colorado Springs on the evening of August 18, 1993. While Nicholas waited across the street, Lucero attempted to rob the victim. In the course of the attempted robbery, Lucero shot and killed the victim. Nicholas and Lucero fled the scene together, but then returned to retrieve the gun that Lucero had used in the crime. At that time, in the early morning hours of August 19, 1993, the police apprehended both Nicholas and Lucero.
The following facts relevant to the suppression issue are not disputed. On the scene, an officer asked Nicholas some basic identification questions. The officer recorded Nicholas’s responses in a police form called a “Field Interview Record.” Nicholas gave this officer a false name and a false date of birth. Although Nicholas was seventeen years old at the time, the date of birth that Nicholas gave the officer made it appear that he was eighteen years old.
The police took Nicholas to a police substation. At the police substation, Nicholas admitted his true name to the lab technician who performed gunshot residue tests on him. Nicholas told the lab technician that the other information contained in the Field Interview Record was correct.
Detective Brian Ritz interrogated Nicholas three times. The first interrogation lasted from 1:25 a.m. to 2:10 a.m. Detective Ritz failed to administer Miranda warnings to Nicholas before this first interrogation.
The second interrogation was from 2:28 a.m. to 3:15 a.m. Before this second interrogation, Detective Ritz reviewed the Field Interview Record prepared by the arresting officer which included the false name and the false date of birth. Detective Ritz knew that Nicholas had admitted that the name on the Field Interview Record was false. Detective Ritz also knew that Nicholas was arrested with Lucero, who was a juvenile. At the outset of this second interrogation, Detective Ritz obtained a Miranda waiver from Nicholas. There was no parental figure present.
During the second interrogation, Nicholas asked to speak to his father. Detective Ritz responded by asking Nicholas how old he was. When Nicholas stated that he was eighteen, Detective Ritz told him that he could not talk to his father because he was an adult.
Detective Ritz interrogated Nicholas a third time, from 4:00 a.m. to 4:30 a.m. During this third interrogation, Nicholas again asked for permission to call his father. Detective Ritz again asked Nicholas his age, and when Nicholas answered that he was eighteen, Detective Ritz refused to allow him to call his father.
During breaks in between the interrogations, Nicholas was guarded by Officer Mark Cormier, who remained in the hallway while Nicholas sat inside the interrogation room. At one point, Nicholas asked Officer Cormier if the officer would enter the interrogation room because Nicholas needed to talk to someone. Officer Cormier entered the room and engaged in casual conversation with Nicholas, during which Nicholas mentioned the fact that he had two children. When Officer Cormier commented that Nicholas seemed pretty young to have two children and asked Nicholas how old he was, Nicholas told Officer Cormier that he was eighteen years old. Officer Cormier observed Nich *1215 olas off and on throughout the early morning hours and testified that Nicholas appeared very upset, was occasionally crying, and seemed afraid.
At the end of the interrogations, the police informed Nicholas that they were formally arresting him and taking him to an adult detention facility. At that point, Nicholas told the police that they could not take him to an adult facility because he was only seventeen years old. This was the first time that morning that Nicholas gave his correct age to the police.
Detective Ritz then ran Nicholas’s name through the Colorado Springs Police Department identification section computer. This computer database, which was generally available to the police twenty-four hours a day, showed Nicholas’s correct date of birth and indicated that he was only seventeen.
Nicholas moved to suppress his statements resulting from all three interrogations. Finding that Detective Ritz had failed to give Miranda warnings to Nicholas before the first interrogation, the trial court suppressed Nicholas’s statements made during that interrogation. This ruling is not at issue here.
The trial court denied Nicholas’s motion to suppress his statements made during the second and third interrogations. The trial court found that Nicholas told the police that he was eighteen on five or six occasions. Ruling that the fact that the computer system may have shown that Nicholas was seventeen did not rise to the level of bad faith on the part of the police, the trial court found that the police had acted in good faith. The trial court ruled the second and third statements admissible, reasoning that Nicholas should not be allowed to benefit from lying about his age.
Nicholas was prosecuted as an adult under Colorado’s direct filing statute.[1] Following a jury trial, Nicholas was convicted under a complicity theory of murder in the first degree (felony murder),[2] attempted aggravated robbery,[3] and conspiracy to commit aggravated robbery.[4]
Nicholas appealed, arguing in part that the trial court committed reversible error when it ruled that Nicholas’s second and third statements were admissible. Relying on case law from New York, the court of appeals held that because the police acted in good faith reliance on Nicholas’s misrepresentations about his age, section 19-2-210 did not require exclusion of his statements. See Nicholas, 950 P.2d at 636. Thus, the court of appeals upheld the trial court’s determination that under the totality of the circumstances, Nicholas’s Miranda waiver had been knowing, intelligent, and voluntary, and therefore his statements were admissible. See id.
We granted certiorari in this case to decide “[wjhether the trial court erred in denying [Nicholas’s] Motion to Suppress [Nicholas’s] statement given as a juvenile.” We hold that the trial court’s ruling that Nicholas’s second and third statements were admissible violated the mandate of section 19-2-210.
II. ANALYSIS
As background to our analysis, we note that the Colorado Children’s Code requires that statements of a juvenile taken during custodial interrogation shall be inadmissible unless a parental figure was present and advised of the juvenile’s Miranda rights:
No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his parent, guardian, or legal or physical custodian were advised of the juvenile’s right to remain silent and that any statements made may be used against him in a court of law, of his right to have *1216 counsel appointed if he so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible even though the juvenile’s parent, guardian, or legal or physical custodian was not present.
§ 19-2-210(1), 8B C.R.S. (1993 Supp.) (emphasis added).[5]
Nicholas argues that the language of this section is compulsory and should be strictly construed. Nicholas further argues that the purpose of this section is to provide him with protective counseling concerning his constitutional rights from an adult whose interests are not adverse to his own.
The People argue that Nicholas should not be able to benefit from his own misrepresentations. The People point out that there was no evidence of police misconduct during the interrogations and that the police’s reliance on Nicholas’s repeated assertions that he was eighteen was reasonable. Accordingly, the People argue, the trial court correctly admitted Nicholas’s statements.
Our sole task, therefore, is to determine whether the trial court correctly ruled that because Nicholas lied about his age, he is not entitled to the protection of section 19-2-210.
To decide this question, we begin with basic principles of statutory construction. “In construing statutory provisions, our obligation is not to make policy decisions but rather to give full effect to the legislative intent.” Farmers Ins. Exch. v. Bill Boom Inc., 961 P.2d 465, 469 (Colo.1998). “Our task in construing a statute is to ascertain and to give effect to the intent of the General Assembly, not to second guess its judgment.” Walker v. People, 932 P.2d 303, 309 (Colo.1997). To determine legislative intent, “we look first to the plain language of the statute.” Id. “Where the language is clear and unambiguous, we need not resort to rules of statutory construction.” Id.
Here, the plain language of the statute is clear and unambiguous. According- to section 19-2-210(1), “[n]o statements or admissions of a juvenile” made during custodial interrogation “shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation” and both the juvenile and the parental figure were advised of the juvenile’s Miranda rights. (Emphasis added.) This section requires the presence of a parental figure at a juvenile’s custodial interrogation in order for resulting statements to be admissible in evidence against the juvenile. The use of the term “shall” indicates that the rule is mandatory. See Anderson v. Watson, 953 P.2d 1284, 1290 (Colo.1998). Thus, according to the plain language of section 19-2-210, the presence of a parental figure during the Miranda advisement and interrogation of a juvenile is a precondition to the admissibility of that juvenile’s statements.
Reference to the specific statutory exceptions of section 19-2-210 and other provisions of the Children’s Code supports our conclusion that the plain command of section 19-2-210 means what it says and does not permit us the leeway of reading a good faith exception into the statute.
Section 19-2-210 provides for three exceptions to the rule requiring the presence of a parental figure during a juvenile’s waiver of Miranda rights and interrogation. Statements are admissible despite the absence of a parental figure in three circumstances: when the juvenile is (1) eighteen years old at the time of the interrogation; (2) an “emancipated juvenile”;[6] or (3) a runaway from a state other than Colorado “of sufficient age and understanding.” § 19-2-210(2). The General Assembly did not provide for an exception for juveniles who lie about their age to the police and claim to be adults. Nor *1217 did the General Assembly enumerate an exception for cases in which the police reasonably but mistakenly believe that their suspect is an adult. As a general rule of statutory construction, “[t]he enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded.” 2A Norman J. Singer, Sutherland Statutory Construction, § 47.23 at 217 (5th ed.1992). Applying this rule here, we find that the existence of the specifically enumerated exceptions to section 19-2-210 indicates that section should apply to all circumstances not specifically excepted. Therefore, we conclude that we should not read a further exception into the statute for the good faith denial of a juvenile’s right to have a parental figure present during custodial interrogation.[7]
Reference to other sections of the Children’s Code also counters the People’s argument for a good faith exception to the requirement of parental presence during the custodial interrogation of a juvenile. The General Assembly chose to include an express good faith exception to the suppression of tangible evidence for Fourth Amendment violations. See § 19-2-803, 6 C.R.S. (1998) (previously codified at § 19-2-209(1), (2)(a)). The General Assembly’s failure to include a similar exception for the waiver of a child’s Miranda rights is strong evidence that the legislature did not intend for there to be a good faith exception to section 19-2-210 in cases such as the one before us today where the police mistakenly believe that their suspect is an adult.
III. THE PLAIN LANGUAGE OF SECTION 19-2-210 IS CONSISTENT WITH THE GENERAL ASSEMBLY’S STATED PURPOSES REGARDING JUVENILES
Because the plain language of section 19-2-210 is clear and unambiguous, we do not consider alternative means of discerning legislative intent. However, we note that the command of section 19-2-210 is consistent with the General Assembly’s stated purposes regarding juveniles.
Since enacting the Colorado Child’s Code in 1963, the legislature has reorganized and amended it on many occasions. However, the overriding purposes of the Children’s Code have remained unchanged:. to preserve and strengthen family ties while securing a child’s welfare, to draw a distinction between adults and children who violate the law, and to protect and rehabilitate juveniles who violate the law. See People v. Juvenile Court, 893 P.2d 81, 90 (Colo.1995); People in the Interest of B.M.C., 32 Colo.App. 79, 82, 506 P.2d 409, 410 (1973). By express legislative declaration, the General Assembly stated its purposes regarding treatment of children:
Legislative declaration. (1) The general assembly declares that the purposes of this title are:
(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;
(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;
(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and
(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him *1218 in becoming a responsible and productive member of society.
§ 19-1-102, 6 C.R.S. (1998).
The General Assembly created the parental presence rule in 1967, a year after the United States Supreme Court issued its landmark ruling in Miranda v. Arizona) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See 1963 C.R.S. § 22-2-2 (1967 Supp.).[8] In Miranda, the Supreme Court held that statements stemming from a custodial interrogation of the defendant will be inadmissible unless the police advise the defendant of the now-famous litany of rights[9] and the defendant executes a knowing, intelligent, and voluntary waiver of those rights. See Miranda, 384 U.S; at 444, 86 S.Ct. 1602. Rather than merely codifying the protections of Miranda for juveniles, however, the General Assembly went further. Consistent with the general purposes of the Children’s Code, the General Assembly instituted a rule that the statements of a juvenile are not admissible unless
a parental figure of that juvenile was advised of the juvenile’s Miranda rights and was present during the custodial interrogation of the juvenile. The plain language of this statutory mandate reflects the General Assembly’s recognition that juveniles generally lack the capacity to make important legal decisions alone. Thus, the General Assembly adopted the parental presence rule to further its purpose of strengthening family ties and to guard against invalid waivers of important constitutional rights by minors acting without assistance.[10]
The General Assembly’s institution of a parental presence rule for juvenile interrogations, foreshadowed the Supreme Court’s extension of constitutional protections to juveniles in delinquency proceedings in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).[11] In its opinion in Gault, the Supreme Court discussed the unique legal issues that arise because of the immaturity of juveniles:
*1219 We appreciate that special problems may arise with respect to waiver of the privilege [against self-incrimination] by or on behalf of children, and that there may well be some differences in technique — but not in principle — depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts, and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.
Gault, 387 U.S. at 55, 87 S.Ct. 1428 (emphasis added).
The understanding that juveniles have less capacity than adults and therefore need special assistance has its counterpart in civil law in Colorado. The General Assembly set eighteen as the minimum age of competence for people to independently enter into contracts, manage estates, and sue and be sued. See § 13-22-101, 5 C.R.S. (1998). This court has recognized that because of the need to protect minors from their own immature acts, a contract entered into by a minor is not enforceable: “As a matter of public policy, the courts have protected minors from improvident and imprudent contractual commitments by declaring that the contract of a minor is voidable at the election of the minor after he attains his majority.” Jones v. Dressel, 623 P.2d 370, 373 (Colo.1981). This rule of law retains its vitality even in cases where the minor has induced the other party to enter into the contract by misrepresenting the minor’s age:
We expressly hold that a minor during his minority, and acting timely on reaching his majority, may disaffirm any contract that he may have entered into during his minority, and this is equally true whether he has or has not misrepresented his age and even though his misrepresentation of age induced the other party to enter into the contract.
Doenges-Long Motors v. Gillen, 138 Colo. 31, 35-36, 328 P.2d 1077, 1080 (1958) (emphasis added). Thus, we view our application of the plain meaning of section 19-2-210 here as consistent with the way in which civil law protects juveniles from being bound by legal decisions they make, even when they lie about their age.
IV. THE AUTHORITIES CITED BY THE PEOPLE ARE INAPPOSITE
In addition, the People urge us to adopt the rationale of eases from other jurisdictions that hold that a juvenile should not be allowed to benefit from a statute designed to protect juveniles when the juvenile has misrepresented his or her age to the police. Because none of the cases cited by the People involve the application of a statute such as ours which mandates the automatic exclusion of a juvenile’s statements absent certain safeguards, we are not persuaded that the analysis in these cases relieves us of our duty to apply the plain meaning of section 19-2-120 to this ease.
There are two general approaches to the problem of how to protect a juvenile’s privilege against self-incrimination. The first is an after-the-fact review of the totality of the circumstances to determine whether a juvenile’s waiver was knowing, intelligent, and voluntary. The second is the adoption of initial safeguards and a rule of exclusion whenever the juvenile has not been afforded the special assistance required. This “‘per se’ approach automatically excludes a waiver based on the absence of certain circumstances - i.e., on the absence of the requisite procedural safeguards.” Thomas Grisso, Juvenile’s Capacities to Waive Miranda Rights: An Empirical Analysis, 68 Cal. L.Rev. 1134, 1135 (1980). One reason for the adoption of a per se rule is to ensure more consistent application than is possible with a totality of the circumstances test:
While a per se approach will not necessarily eliminate all uncertainty and inconsistency, its restriction of the judicial role to the determination of several minimal criteria ... decreases the possibility of an unfounded determination. Moreover, the cri *1220 teria themselves provide more objective grounds than the juvenile’s state of mind and can be satisfied more consistently than a “gut level” determination.
Id. at 1161.
Within the category of rules of per se or automatic exclusion of juveniles’ statements, a further distinction can be drawn between those rules that are explicit statutory rales of evidence and those rules that appellate courts have created in their common-law capacities to further the goals of other statutory provisions designed to protect juveniles.
In Colorado, through section 19-2-210, the legislature has enacted an explicit statutory rule of evidence that operates as a per se or automatic rule of exclusion in the absence of the procedural safeguards set forth in that section. The legislatures of several other states have enacted statutes adopting analogous rules.[12] In none of these states have the appellate courts decided the question before us today: whether to apply the statutory mandate even when the juvenile has lied to the police about his or her age.
The People urge us to follow cases from Indiana and New York holding that when police denied suspects special protections designed to protect juveniles because the suspects presented themselves as adults, this denial did not render resulting statements inadmissible. See Stone v. State, 268 Ind. 672, 377 N.E.2d 1372, 1373-74 (Ind.1978); People v. Salaam, 83 N.Y.2d 51, 607 N.Y.S.2d 899, 629 N.E.2d 371, 374 (N.Y. 1993); In the Matter of Hector C., 95 Misc.2d 255, 406 N.Y.S.2d 958, 960 (N.Y.Fam.Ct.1978). These cases are inapposite because none of them involve a per se or automatic statutory rale of exclusion such as ours. Rather, these cases involved the application of court-created rules designed to implement and further more general parental notification statutes.[13] See Stone, 377 N.E.2d at 1373; Salaam, 607 N.Y.S.2d 899, 629 N.E.2d at 373; Hector C., 406 N.Y.S.2d at 959. Parental notification statutes merely require the police to notify the parents of a juvenile that they have taken the juvenile into custody. They are not explicit rules of' evidence on the admissibility of a juvenile’s statements.[14] However logical the reasoning of these cases-may be, they are not persuasive here, where we must apply the mandatory rule of exclusion of section 19-2-210.
V. CONCLUSION
Because the plain language of the statute is clear and unambiguous, our task is straightforward: to apply the statute as written, without second-guessing the legislature’s policy judgments. The following facts are undisputed: (1) Nicholas was a juvenile at the time of his interrogation; (2) his statements were made as a result of custodial interrogation; and (3) no parent or parental figure was present when the detective advised Nicholas of his Miranda rights, obtained a Miranda waiver, and interrogated him. Thus, even though Nicholas repeatedly lied about his age to the police, his statements were inadmissible under the plain language of section 19-2-210. Therefore, we reverse the court of appeals decision and return the ease to the court of appeals with directions to remand this case to the trial court for a new trial.
*1221 Justice KOURLIS dissents, and Chief Justice MULLARKEY and Justice RICE join in the dissent.

. See § 19-2-805, 8B C.R.S. (1993 Supp.).

. See § 18-3-102(1)(b), 8B C.R.S. (1986).

. See §§ 18-4-302(1)(a), (b) and 18-2-101, 8B C.R.S. (1986).

. See § 18-2-201, 8B C.R.S. (1986).

. This section is currently codified at section 19-2-511, 6 C.R.S. (1998).

. The General Assembly has defined an ”[e]man-cipated juvenile” as "a juvenile over fifteen years of age and under eighteen years of age who has, with the real or apparent assent of his parents. demonstrated independence from the his parents in matters of care, custody, and earnings. The term may include, but shall not be limited to, any such juvenile who has the sole responsibility for the his own support, who is married, or who is in the military.” §19-2-210(2).

. We briefly note that although the police in this case acted in complete good faith, because they knew that Nicholas had given a false name, they were on inquiry notice that not all of Nicholas's assertions about his identity were truthful. Requiring the police in a case like this to ran a quick and simple records check through their computer system before proceeding with interrogation without the presence of a parental figure is considerably less onerous than the inquiries that section 19-2-210 presently requires the police to make to determine whether they can proceed without a parental figure because their suspect is either an emancipated juvenile or a runaway from another state of sufficient age and understanding.

. This statutory provision was subsequently codified at section 19-2-102, 8B C.R.S. (1986) and later at section 19-2-210, 8B C.R.S. (1989 Supp.). It is currently codified at section 19-2-511, 6 C.R.S. (1998).

. "[The suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.” Miranda, 384 U.S. at 479, 86 S.Ct. 1602.

. See People v. S.M.D., 864 P.2d 1103, 1106 n. 7 (Colo.1994) ("It is implicit that a child involved in the commission of an offense should be afforded protectivé counseling concerning his legal rights from one whose interests are not adverse to those of the child, to the end that any statements made by the child be given voluntarily, knowingly, and intelligently.”) (quoting People v. McAnally, 192 Colo. 12, 15, 554 P.2d 1100, 1102-03 (1976)); People in the Interest of G.L., 631 P.2d 1118, 1120 (Colo.1981) ("The purpose of [the] section ... is to provide a child with parental guidance during police interrogation, and to ensure that any waiver of the child’s Fifth Amendment rights against self-incrimination and Sixth Amendment right to counsel will be made knowingly and intelligently.”); People v. Saiz, 620 P.2d 15, 19-20 (Colo.1980) ("By requiring the presence of a parent, legal guardian, or attorney during the advisement of rights under Miranda v. Arizona and during any interrogation, the statute provides 'an additional and necessary assurance that the juvenile's Fifth Amendment right against self-incrimination ... will be fully afforded to him.’ ”) (citation omitted) (quoting People v. Maes, 194 Colo. 235, 237, 571 P.2d 305, 306 (1977)); People v. L.A., 199 Colo. 390, 392, 609 P.2d 116, 118 (1980) (“[t]he purpose of [the] section ... is to provide assistance to the child in determining whether to exercise or to waive the privilege against self-incrimination and right to counsel"); People v. Hayhurst, 194 Colo. 292, 297, 571 P.2d 721, 725 (1977) ("The statute is designed to provide the child parental guidance during police interrogations, and thereby provide at least some assurance that the child's waiver of rights will be made knowingly and intelligently-”); People in the Interest of L.B., 33 Colo.App. 1, 3-4, 513 P.2d 1069, 1070 (1973) ("The statutory requirement of the presence of a parent or guardian at the interrogation of a child by law enforcement officers is designed to provide parental guidance and assistance to the child and thereby to provide at least some minimal assurance that a child’s waiver of his right against self-incrimination is knowingly and intelligently made.”).

.The Supreme Court issued the Gault decision on May 15, 1967. Although the Colorado bill containing the adoption of the parental presence requirement (H.B.1001) was not formally signed by the governor until June 16, 1967 - i.e., a month after Gault — the General Assembly had passed this bill months earlier. See ch. 443, art. 2, § 22-2-2(c), 1967 Colo. Sess. Laws 993, 1003, 1054; Journal of the House of Representatives, State of Colorado, Forty-Sixth General Assembly (1967) at 1597.

. See Conn. Gen.Stat. § 46b-137(a) (1997); Iowa Code § 232.11 (1997); Mont.Code Ann. § 41-5-331(2) (1998); N.C. Gen.Stat. § 7A-595(b) (1995); 10 Okla. Stat. Ann. § 7303-3.1 (1998); Vernon's Texas Codes Ann., Family Code §51.09 (1996).

. Moreover, the rule in Stone - when the admissibility of statements taken during custodial interrogation is at issue, a juvenile should not be allowed to benefit from lying about his or her age — is probably no longer valid in Indiana. Stone involved the application of a rule of admissibility that the Supreme Court of Indiana had created in Lewis v. State, 259 Ind. 431, 288 N.E.2d 138 (Ind.1972). Lewis has since been superseded by statute. According to Ind.Code § 31-32-5-1 (1998), a child’s rights may only be waived by the child's counsel; the child’s parent, guardian, custodian, or guardian ad litem; or the child, if he or she has been emancipated. No Indiana court has held that the provisions of Ind.Code § 31-32-5-1 can be sidestepped if the juvenile has misrepresented his or her age.

.Colorado has an analogous parental notification statute, which was codified at section 19-2-203 at the time of Nicholas’s arrest and is currently codified at section 19-2-507. It is separate and distinct from section 19-2-210 (currently codified at section 19-2-511).