Justice KOURLIS
dissenting:
The Colorado Children’s Code provides for the exclusion of statements made to police by juveniles who are unaccompanied by a parent, guardian, or custodian during interrogation. Today, the Majority automatically applies that protection to a seventeen-year-old murder suspect who repeatedly told police he was eighteen and whom the trial court found to have made a voluntary, knowing, and intelligent waiver of his rights. Because I believe that the Children’s Code parental presence requirement does not apply when a juvenile’s own misrepresentations cause the police to believe in good faith that he is an adult, I respectfully dissent.
I.
On the evening of August 18, 1993, Petitioner Dameon E. Nicholas and a friend were involved in the murder of an elderly man in the parking lot of a pharmacy in Colorado Springs. Nicholas’s friend, Allan Lucero, accosted and shot the victim in the parking lot while Nicholas waited across the street. After the shooting, Nicholas and Lucero left the scene together, but they later returned to the area to retrieve the gun used in the killing. Both Nicholas and Lucero then were apprehended by police, who had been searching the area for suspects and evidence.
Police questioned Nicholas and Lucero individually. The officer who interviewed Nicholas at the scene recorded that Nicholas represented his age as eighteen and gave a date of birth corresponding to that age. At the police station, officers interviewed Nicholas three more times. During each interview Nicholas confirmed that he was eighteen years old. In addition, Nicholas represented his age as eighteen during a casual conversation with an officer who was guarding the interview room, and he told the officer that he had two children of his own.
During the course of police interrogation, Nicholas twice asked to speak with his father. In response, the interviewing officer each time asked him how old he was. Both times Nicholas answered that he was eighteen, and the officer told him that he could not speak to his father because he was an adult. On neither of these occasions did Nicholas retract his statement that he was eighteen or attempt in any way to correct the misimpression he had created. It was not until the end of the third interview, when police informed Nicholas that he was under arrest, that Nicholas objected to being taken to an adult correctional facility and stated that he was seventeen years old.
At trial, Nicholas moved to suppress all statements that he made during the three interviews at the police station. Nicholas claimed in pertinent part that because he was only seventeen when he made the statements, section 19-2-210, 8B C.R.S. (1993 Supp.) precluded admission of his statements because he was not accompanied by a parent, guardian, or custodian during the interrogation. The trial court suppressed the statements made during the first interview because the police had not given Nicholas Miranda warnings. The court admitted the statements Nicholas made in the following two interviews, concluding that on five or six different occasions Nicholas had misrepresented himself as being eighteen, and that the police had no reason to disbelieve him.[1] In summary, the trial court determined that Nicholas should not be permitted to benefit from his own misrepresentations, and that under the totality of the circumstances Nicholas had validly waived his Miranda rights.
Although Nicholas was seventeen at the time the crimes were committed, he was tried as an adult pursuant to the procedures then set forth in section 19-2-805, 8B C.R.S. (1993 Supp.). He was convicted under a complicity theory of murder in the first degree (felony murder), section 18-3-102(l)(b), 6 C.R.S. (1998); attempted aggravated robbery, sections 18-4-302(l)(a), (b) and 18-2-101, 6 C.R.S. (1998); and conspiracy to com *1222 mit aggravated robbery, section 18-2-201, 6 C.R.S. (1998). He was sentenced to life in prison for the murder charge and to concurrent six-year prison terms for the other offenses. The court of appeals affirmed the convictions. See People v. Nicholas, 950 P.2d at 634, 636 (Colo.App.1997). Nicholas appealed, and this court granted certiorari to review the propriety of admitting the statements Nicholas made in the second and third interviews given his age at the time. Because I believe that Nicholas’s statements were properly admitted, I would affirm the decision of the court of appeals.
II.
The Legislature enacted the Children’s Code in order to preserve the welfare of children and the interests of society. See § 19-1-102, 6 C.R.S. (1998). To effect these broad purposes, the Code delineates protections and procedures for addressing the issues facing juveniles in matters of family law and criminal justice. The section of the code pertinent to the admissibility of a juvenile’s statement provides in part:
No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his parent, guardian, or legal or physical custodian were advised of the juvenile’s right to remain silent and that any statements made may be used against him in a court of law, of his right to the presence of an attorney during such interrogation, and of his right to have counsel appointed if he so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible in evidence even though the juvenile’s parent, guardian, or legal or physical custodian was not present.
§ 19-2-210(1), 8B C.R.S. (1993 Supp.). The General Assembly adopted this provision in 1967.[2] The section has two primary effects: first, it extends the protections of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) to juveniles in a manner consistent with the holding of In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); and second, it provides juveniles with access to an adult. See People v. Legler, 969 P.2d 691, 694 (Colo.1998). Hence, the real purpose of the statute is to ensure that a juvenile understands his Fifth Amendment rights and makes a responsible choice about whether or not to waive those rights in interrogation.[3]
The question before us, then, is whether these principles should serve automatically to exclude from evidence the statements of a young man who on the date of interrogation *1223 was seventeen years and seven months old, when he consistently and credibly told police he was eighteen years old.
III.
Contrary to the Majority’s position, I would hold that a juvenile who repeatedly misrepresents his age to law enforcement officers in a credible and affirmative manner is not entitled to invoke the benefit of the statutory protection. The statute is designed to support and enforce Fifth Amendment rights, such that a young person does not unwittingly waive those rights. It is not an escape hatch through which a manipulative defendant can slip after having passed himself off as an adult for all purposes.
Application of the Majority’s approach is likely to lead to strange and anomalous results. For instance, consider a situation in which a suspect with a mature appearance and no prior police contact presents false identification to the police and otherwise holds himself out as an adult.[4] The police would have no reason to disbelieve the suspect’s representation, and would likely interrogate the suspect without first securing the presence of a parent. In formulating an approach that requires suppression of a defendant’s statements under such circumstances, the Majority not only rewards a putative defendant for his lies, but creates an unworkable dilemma for law enforcement officers. Every time the police interrogate someone who might be under the age of eighteen, they will need to have a parental figure present in order to guard against the possibility that the individual is lying about his age. Such extraordinary measures are not consistent with the purpose or commonsense application of the Children’s Code.
Courts in other jurisdictions have addressed similar cases in which young adults seek protection of statutes designed to serve juveniles in the face of their own assertions of adulthood. In the “Central Park jogger” case in New York, a fifteen-year-old suspect told police that he was sixteen, leading police to question the suspect without parental notice or presence. See People v. Salaam, 83 N.Y.2d 51, 607 N.Y.S.2d 899, 629 N.E.2d 371, 372 (N.Y.1993). In response to the defendant’s argument that his statements should be suppressed because they were taken in violation of a statute aimed at protecting juveniles,[5] the New York Court of Appeals concluded that the “[djefendant’s own repeated affirmative deceptions, which led the police to believe that he was a legal adult, supplied a lawful basis to question him without parental or guardian notification or presence so long as adult protections, like Miranda warnings, were attended to, which they were.” Id. 607 N.Y.S.2d 899, 629 N.E.2d at 374. Similarly, in In re Hector C., the defendant informed the police that he was sixteen years of age and gave a corresponding birth date. See In re Hector C., 95 Misc.2d 255, 406 N.Y.S.2d 958, 959-60 (N.Y.Fam.Ct.1978). The New York Family Court held that “it was the respondent’s deliberate misrepresentation which led to the respondent’s interrogation in the absence of his parents without any notice of his detention.” Finding no impropriety on the part of law enforcement, the court permitted the evidence to be introduced.
In Massey v. State, the Georgia Supreme Court admitted the confession of a juvenile who lied to police officers about his age, telling them that he was seventeen when in fact he was not in order to avoid the procedures of juvenile court. See Massey v. State, 243 Ga. 228, 253 S.E.2d 196, 198 (Ga.1979). The court applied the totality of the circumstances test and determined that the juvenile had made a valid waiver of his rights. See id. Indeed, many jurisdictions determine the validity of a juvenile’s waiver by applying *1224 the totality of the circumstances test, in which age, education, and experience are factors to be considered with those factors relevant to adult waivers. See, e.g., State v. Smith, 546 N.W.2d 916, 926-27 (Iowa 1996) (applying the totality of the circumstances test to juveniles’ admissions); State v. High, 260 Kan. 480, 922 P.2d 430, 432-33 (Kan.1996) (applying the totality test and noting that “[a] confession is not inadmissible merely because the person making it is a juvenile”) (internal quotation marks and citation omitted).
Even courts in those jurisdictions in which juvenile protections were first established by court rules or case law have reassessed the wisdom of a blanket suppression of an unaccompanied juvenile’s statements. The Pennsylvania Supreme Court, for example, overruled its judicially created parental presence rule, “recognizing] the lack of wisdom in a rule which is overly paternalistic, unnecessarily protective and sacrifices too much of the interests of justice.”[6] More recently, the Supreme Court of Louisiana struck down its per se rule limiting the exclusion of juvenile statements and reinstated the totality of the circumstances approach followed in most jurisdictions and embraced by the United States Supreme Court. See State v. Fernandez, 712 So.2d 485, 489 (La.1998) (“Under a totality of circumstances standard, the special needs of juveniles can be accommodated in a manner that affords protection not only to juveniles, but also to the interests of society and of justice.”).
In short, then, under both statutory and court-developed legal frameworks, a majority of jurisdictions around the nation have determined that a juvenile’s interest in making a responsible waiver of Miranda rights may not be considered in isolation from the best interests of society in securing justice against juvenile offenders. Construing the Children’s Code in a manner that gives effect to legislative intent requires us to consider both of these policy objectives. See § 19-1-102(l)(a), 6 C.R.S. (1998) (noting that the purpose of the statute is “[t]o secure for each child subject to these provisions such care and guidance ... as will best serve his welfare and the interests of society”); § 19-1-102(2), 6 C.R.S. (1998) (“[T]he provisions of this title shall be liberally construed to serve the welfare of children and the best interests of society.”). The trial court’s decision not to apply the parental presence requirement in this situation is consistent with both of these stated goals.
IV.
Of course, the determination that the protections of the Children’s Code do not apply to a juvenile who misrepresents his age does not necessarily mean that his statements are automatically admissible. The defendant is still entitled to a close review of the circumstances under which the statements were made to assure that all Miranda requirements were met. The admissibility of his statements depends upon whether he made a voluntary, knowing, and intelligent waiver of his Miranda rights under the totality of the circumstances.[7] This approach preserves the welfare of the juvenile because it allows a court to consider a juvenile’s age and overall capacity to understand his rights in determining the validity of his waiver. In addition, by not automatically requiring suppression of statements by a juvenile who triggers unaccompanied police interrogation with his own lies, the totality of the circumstances test acknowledges the interests of society.
*1225 In this case, the trial court found that under the totality of the circumstances, the statements Nicholas made in his second and third interviews at the police station were admissible. The record indicates that the interviews were of relatively short duration (thirty to forty-five minutes), that Nicholas was not handcuffed during interrogation, and that the police made no threats or promises to him. Moreover, although Nicholas was persistent in creating the misimpression that he was eighteen years old, he was sophisticated enough to correct it when he realized that he was under arrest and would be taken to an adult correctional facility. Finally, Nicholas was five months short of his eighteenth birthday at the time of the interrogation and had children of his own. Such evidence is adequate to support the conclusion that under the totality of circumstances, Nicholas made a voluntary, knowing, and intelligent waiver of his rights.
I agree with the court of appeals that the trial court correctly admitted Nicholas’s statements from his second and third interviews with the police. Accordingly, I would affirm the judgment below.
I am authorized to state that Chief Justice MULLARKEY and Justice RICE join in this dissent.

. One witness testified that the Colorado Springs Police Department Identification Section computer records on Nicholas reflected his correct age. The trial court concluded that the existence of those records did not rise to a legal finding of bad faith on the part of the police.

. See ch. 443, art. 2, § 22-2-2(c), 1967 Colo. Sess. Laws 993, 1054 (noting that the law was adopted on June 16, 1967).
The provision was originally codified at section 22-2-2, 2 C.R.S. (1967 Supp.); was subsequently codified at section 19-2-102, 8B C.R.S (1986) and later at section 19-2-210, 8B C.R.S. (1989 Supp.); and is now codified at section 19-2-511, 6 C.R.S. (1998). The legislature amended the section in 1996, but those changes are not relevant here.

. I agree with the Majority that the United States Supreme Court has recognized the existence of special concerns regarding the protection of a juvenile's Fifth Amendment rights. See maj. op. at 1219 (noting the Court's admonition in In re Gault that "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of igno-ranee of rights or of adolescent fantasy, fright or despair”) (quoting In re Gault, 387 U.S. at 55, 87 S.Ct. 1428). I do not believe, however, that the Court has expressed the view that all juveniles inherently lack the capacity to make a valid waiver of Miranda rights. To the contrary, the Court has held that the totality of the circumstances test, which is used to determine the validity of an adult's waiver, is adequate to protect a juvenile’s Fifth Amendment rights. See Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Indeed, the Court has embraced the totality of the circumstances approach in the juvenile context specifically because it "refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation.” Id. at 725-26, 99 S.Ct. 2560.

. Under such circumstances, even the Majority could not contend that the police would be on inquiry notice that the suspect was lying about his age. Moreover, resort to a "quick and simple records check” would prove useless in the case of a suspect with no prior criminal record. See maj. op. at 1217 n. 7.

. New York law provided that after a warrantless arrest of a juvenile offender, police were required to notify immediately the parent or custodian of the child. See N.Y. C.P.L.R. 140.20(6) (McKinney 1992). The designation "juvenile offender” referred to children under 16 years of age. See N.Y. C.P.L.R. 1.20(42) (McKinney 1992).

. Commonwealth v. Williams, 504 Pa. 511, 475 A.2d 1283, 1287 (Pa.1984) (citing Commonwealth v. Christmas, 502 Pa. 218, 465 A.2d 989, 992 (Pa.1983)). Pennsylvania originally used a totality of the circumstances test to determine the validity of a juvenile’s waiver. In a series of cases in 1974-75, however, the Pennsylvania Supreme Court developed a per se rule providing that no'juvenile could waive his Miranda rights without being provided an opportunity to consult with an interested adult. See, e.g., Commonwealth v. McCutchen, 463 Pa. 90, 343 A.2d 669 (Pa.1975). Then in 1983, that court abandoned the per se rule in favor of a presumption that a juvenile was incompetent to make a valid waiver in the absence of an interested adult. See Christmas, 465. A.2d at 992. In 1984, the court rejected application of the rebuttable presumption, and returned to a totality of the circumstances test. See Williams, 475 A.2d at 1287-88.

. This court has recently described the criteria for determining whether a waiver was voluntary, knowing, and intelligent in People v. Mejia-Mendoza, 965 P.2d 777, 780 (Colo.1998).